**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **SPARTAN COMPOSITES, LLC,** | § | |
| **d/b/a FODS, and SPARTAN MAT,** | § | |
| **LLC,** | § | |
| | § | |
| | § | **Case No. _____** |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **SIGNATURE SYSTEMS GROUP,** | § | |
| **LLC,** | § | |
| | § | |
| **Defendant.** | | |

### ORIGINAL COMPLAINT

Plaintiffs Spartan Composites, LLC d/b/a FODS ("FODS") and Spartan Mat, LLC

files this Original Complaint against Defendant Signature Systems Group, LLC ("SSG").

### I.    INTRODUCTION

1.    FODS brings this lawsuit because SSG misappropriated FODS' trade secrets

to jumpstart a profitable new business line and divert customers from its direct

competitor. SSG sought to acquire FODS in 2018 and again in 2021. As part of those

discussions, FODS provided detailed information to SSG concerning its unique and

innovative trackout control mats, and specifically, the manufacturing methods,

processes, molds, equipment, and tooling used to manufacture them.

2.    SSG chose not to consummate a deal with FODS after extensive and

thorough due diligence. Instead, SSG set out to build its own trackout control mat to

compete with FODS, who is the market leader in the field. Unlike FODS, who invested

millions of dollars and spent years developing its business, SSG undertook this process not by dedicating the time and capital needed to compete in this market but, upon information and belief, by using FODS's trade secrets that SSG systematically collected during the months in which it conducted due diligence on the potential transaction.

3. SSG released its competing mat – the DiamondTrack Mat – on November 1, 2023, with what it refers to as a "distinctive diamond-shaped terrain." In fact, there is nothing distinctive at all about SSG's Mat. SSG's DiamondTrack mat looks nearly identical to FODS's trackout control mat. Indeed, SSG's DiamondTrack mat has the same dimensions as the FODS mat, similar trackout control features, and is both interlockable and interoperable with FODS's mat in violation of an earlier settlement agreement between SSG, Spartan Mat, LLC and Spartan Composites, LLC.

4. FODS therefore brings this suit to recover actual and punitive damages, including its attorneys' fees, and to obtain an injunction preventing SSG from using FODS's trade secrets.

## II.   THE PARTIES

5. Plaintiff Spartan Composites, LLC d/b/a FODS is an Arizona limited liability company with its principal place of business at 135 Gus Hipp Boulevard, Rockledge, Florida 32955. Spartan Composites manufactures the FODS trackout control mats.

6. Plaintiff Spartan Mat, LLC is an Arizona limited liability company, having an office and pace of business at 2576 E. Melrose, Gilbert, Arizona, 85297.

7.      Defendant Signature Systems Group, LLC is a Delaware limited liability company with its principal place of business at 1201 Lakeside Parkway, Suite 150, Flower Mound, Denton County, Texas 75208.

### III.    JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this lawsuit pursuant to the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* and 28 U.S.C. § 1331.

9.      This Court has personal jurisdiction over Defendant. Defendant's principal place of business is in Texas, it is licensed to do business and, in fact, does substantial business in Texas.

10.     The Eastern District of Texas is a proper venue for this lawsuit pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(d) because Defendant resides in this judicial district. Defendant maintains its principal place of business in this district and has substantial contacts with this district. The facts further show that the convenience of the parties and the witnesses and the interests of justice would be best served in this district.

11.     Finally, SSG agreed to venue in this judicial district in an agreement between the parties that forms, in part, the basis for this lawsuit. *See* Settlement Agreement at Section 16 ("With respect to disputes arising from this Settlement Agreement, the United States District Court for the Eastern District of Texas, Sherman Division will retain jurisdiction and venue, to which the Parties consent and waive their right to any other venue.").

### IV.   FACTUAL BACKGROUND

**A.   FODS**

FODS was founded on November 29, 2011. FODS is a global leader in the manufacture and sale of composite trackout solutions for the construction industry. FODS's innovative trackout control solutions have disrupted the industry by providing a better way to build construction entrances by cleaning construction vehicle tires when leaving the jobsite. Instead of using rock, which is disposed after every use, FODS developed a rough surface mat which is reusable and easy to clean. FODS's reusable trackout control mat is ultra-durable, non-toxic, and can be reused over and over throughout its service life. Compared to traditional rock construction entrances, FODS's trackout control mats significantly reduce the customer's cost required to acquire, transport, install, and maintain traditional construction entrances. This was a unique and novel development in the construction industry.



Figure 1 – FODS' Trackout Control Mat.

12.     Beginning in early 2014, FODS, while working at kitchen tables and using the personal investments of the originating members, invested heavily to design and manufacture these unique and innovative trackout control mats. Unlike other mats in use in the construction industry, FODS' trackout control mat was designed to deform the tires of vehicles as they rolled over the mat, causing mud and debris to fall from the tires before the vehicle left the construction site.

13.     This was a product that did not then exist in the marketplace and FODS had to develop the means and methods to manufacture such an innovative product. The design and manufacture of this mat required a significant investment by FODS. Indeed, it took years of effort to develop the design of the molds and a confidential manufacturing process used to manufacture these mats. FODS derives independent economic value

from having this information, particularly its unique method of manufacturing the mats, not generally known or readily ascertainable outside the company.

14. As part of its successful growth, FODS has developed confidential and proprietary business information, which, among other things, includes information about its costs, profit margins, customer pricing, negotiations with current and potential customers, and its proprietary manufacturing processes. FODS derives independent economic value from having this, and the information described below, is not generally known or readily ascertainable outside the company.

15. FODS's years of investment paid off. Between July of 2016 and 2024, FODS sold over $85,000,000.00 worth of Trackout Control Matting. By 2018, FODS was the clear market leader in the development and manufacture of its trackout control mats.

16. FODS vigorously protects its trade secret information through various means. For instance, FODS data, including its confidential and proprietary business information, are maintained on a secure computer system that has restricted access with security passwords that employees must use to log onto their computers. Additionally, FODS corporate office is secured by a 24-hour monitored security system which logs the opening, closing, of every door and tracks the entering individuals using a key card system. FODS uses a secure accounting and file sharing platform which provides end-to-end encryption, logs any files download activity, and encrypts all data while at rest.

**B.    SSG**

17. SSG manufactures and distributes industrial composite matting, turf protection systems, temporary event floors, carpets, and fencing. SSG provides industrial

matting to support heavy vehicles, surfaces for schools and arenas, modular flooring, and basecamp flooring for military applications. Like FODS, SSG manufactures mats used by the construction industry. Unlike FODS, however, and upon information and belief, as of October 30, 2023, SSG did not offer a trackout control mat designed to remove mud from the tires as vehicles passed over the mat.

18.    Rather than design, develop, and manufacture its own trackout control mat solution to compete with FODS, SSG instead postured, at various points, to acquire FODS for itself. As early as August of 2018, representatives of SSG and FODS executed a Confidentiality Agreement to permit the exchange of information between the parties to facilitate a discussion over the sale of FODS to SSG. In that Confidentiality Agreement, executed on August 13, 2018, SSG acknowledged that the confidential information exchanged would be solely used for the purpose of evaluating a possible transaction between the companies, and that SSG's representatives would not disclose any such information to any third-party. SSG further acknowledged that all confidential information exchanged would be returned or destroyed should the transaction not consummate and would not be used in any independent development.

19.    In September 2019, and as part of these discussions, SSG completed a comprehensive review of FODS's patent for its trackout control mat and other intellectual property related to the manufacture of its mats. During these discussions, SSG pressed FODS on what features were patented and where it was protected. SSG focused its attention on newer design elements such as the incorporation of a ramped design, based on market development feedback. SSG wanted to know, among other things, if FODS

had been able to add this element to the current patent, or if a new patent had been applied for and its ability to protect these newer innovations. After many months of review and discussion, however, the parties did not consummate a sales transaction. SSG did not manufacture and sell trackout control mats in 2018 or 2019, and upon information and belief, had not started to design or develop a trackout control mat.

20.    In May of 2021, SSG expressed a renewed interest in restarting negotiations to acquire FODS. On May 25, 2021, SSG executed a Mutual Confidentiality Agreement to facilitate those discussions and the exchange of confidential information. Like the prior confidentiality agreement, the May 2021 Confidentiality Agreement contemplated the exchange of confidential technical and business information, including designs, specifications, ideas, and concepts, customer information related to FODS business. SSG agreed, among other things, that it would not use FODS's confidential information for its own or a third party's benefit.

21.    In June 2021, FODS provided SSG with more confidential financial information, per SSG's request. In July 2021, FODS provided SSG with its mat mold drawings, again at SSG's request, and answered detailed questions regarding the manufacture and assembly of the trackout control mats.

22.    In November 2021, SSG requested that FODS representatives come to their facility to provide insight and information on the manufacturing, packaging, and fulfillment process. Representatives of FODS met with SSG's engineering, procurement, and marketing teams to hold a brain dump. As part of the purchase negotiations, FODS also created a data room and provided SSG with thousands of pages of confidential

customer and other business-related information. During the process, there were dozens of meetings where SSG would query FODS on both commercial and manufacturing "how to" details under the auspice of this potential acquisition deal.

23.     During the second round of negotiations, SSG requested not just production of all company and financial data needed to complete standard due diligence but also log-in access to FODS's confidential accounting, inventory, and Point-of-Sale software, which allowed SSG to monitor all business activity from production, sales, and quoting in real time and unmonitored by FODS personnel.

24.     In March 2022, SSG directed FODS to send its mold to a South Carolina maintenance shop, chosen by SSG, so that SSG could inspect the mold used by FODS to manufacture its trackout control mats. Believing a transaction was likely, FODS complied. SSG sent its lead engineers to inspect FODS's mold and learn more about FODS's unique and innovative manufacturing processes. SSG's head engineer attended in person and took photographs of FODS's mold and asked detailed questions about FODS's manufacturing processes. During this meeting FODS provided detailed information to SSG concerning the mats, and the unique manufacturing methods, processes, molds, equipment, and tooling used to manufacture them.

25.     Later that same month, SSG abruptly cancelled the deal. On March 30, 2022, FODS requested SSG to destroy all confidential information that it received under the parties Confidentiality Agreement.

**C.**    **SSG Has Jumpstarted Its Trackout Control Mat Business Through Its Use of FODS's Trade Secrets.**

26.    On November 1, 2023 SSG launched its "DiamondTrack" trackout prevention mat, with what it refers to as its "distinctive diamond-shaped terrain." SSG boasts that its trackout mat "delivers unparalleled strength, durability, and effectiveness in tire deformation and sediment dislodgment." SSG's DiamondTrack mat looks nearly identical to FODS's trackout mat, has the same dimensions, has similar trackout control features, and is both interlockable and interoperable with FODS's mats. SSG's DiamondTrack mat is interoperable with the FODS's trackout control mat because, upon information and belief, SSG designed the DiamondTrack mat to have the same dimensions and similar trackout control features as the market-leading FODS mat so that a customer of both might use both mats on the same work site without creating any gaps in coverage.

27.    Similarly, SSG designed its DiamondTrack mat to be interlockable with the FODS mat. Because SSG placed the holes that permit a customer to connect one mat with another in the same location as on the FODS trackout control mat, a customer of both may use the hardware that accompanies the FODS mat to connect the DimondTrack mat to the FODS mat.

28.    Upon information and belief, SSG has used FODS's trade secrets to obtain a significant head start in developing its trackout control mat business. SSG undertook this process not by investing the time and capital needed to gain access to this new

market, but by using the FODS's trade secrets that it systematically collected during the due diligence period for the transaction.

29.     The trade secrets that SSG misappropriated include the following: FODS's confidential method for manufacturing trackout control mats, as well as confidential lists of and detailed information concerning actual and potential customers. Using these FODS trade secrets, SSG was able to avoid significant costs in developing its trackout control mat business and actively block FODS commercial progression into key customer targets, which happen to be current SSG key customers for their other matting products.

30.     By way of example, Sunbelt (a then potential customer of FODS) expressed its intent to become a FODS dealer in July 2021, several months after SSG restarted its negotiations to acquire FODS. Sunbelt and FODS exchanged quotes, planned a national roll out strategy, and made substantial progress towards entering into an agreement. The negotiations with Sunbelt, however, went dark shortly after SSG reengaged with FODS. Ironically, Sunbelt became the first national brand to carry and advertise SSG's Diamond Track mat system.

## V.    CAUSES OF ACTION

**A.    First Cause of Action: Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836.**

31.     As the factual basis for its allegations, FODS incorporates the prior paragraphs of its Complaint as if set forth fully here.

32.     As described above, FODS alleges that SSG misappropriated trade secrets as that term is defined in 18 U.S.C. § 1839(3). FODS further alleges that it took reasonable

measures to keep its proprietary and confidential information secret; and that the information derives economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

33.     FODS alleges that SSG misappropriated FODS's trade secrets by acquiring those trade secrets through improper means and by disclosing and using those trade secrets. Specifically, SSG acquired, disclosed, and used FODS's trade secrets by breaching its contractual duty to FODS to maintain the secrecy of the information.

34.     As remedies for SSG's misappropriation of its trade secrets, FODS seeks an award of damages for its actual loss caused by the misappropriation, as well as damages for unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss, as provided by 18 U.S.C. § 1836(b)(3)(B)(i).

35.     As an alternative to lost profits, FODS seeks an award of damages caused by the misappropriation measured by imposition of liability for an ongoing reasonable royalty for SSG's unauthorized disclosure and use of the trade secret, as authorized by 18 U.S.C. § 1836(b)(3)(B)(ii). FODS also seeks exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

**B.**     **Second Cause of Action: Misappropriation of Trade Secrets in Violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code 134A, _et seq._**

36.     As the factual basis for its allegations, FODS incorporates the prior paragraphs of its Complaint as if set forth fully here.

37.     As described above, FODS alleges that SSG obtained FODS's trade secrets as that term is defined in Tex. Civ. Prac. & Rem. Code 134A.002 and used those trade secrets to develop its own trackout control mats. FODS further alleges that it took reasonable measures to keep its proprietary and confidential information secret; and that the information derives economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

38.     FODS alleges that SSG misappropriated FODS's trade secrets by acquiring those trade secrets through improper means and by disclosing and using those trade secrets. Specifically, SSG acquired, disclosed, and used FODS's trade secrets by breaching the Confidentiality Agreements referenced above. In addition, at the time it used or disclosed FODS's trade secrets, SSG knew or had reason to know that its knowledge of FODS's trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, or was derived from or through persons who owed a duty to FODS to maintain secrecy of FODS's trade secrets or limit their use, in violation of Tex. Civ. Prac. & Rem. Code 134A.002. Moreover, SSG continues to use the misappropriated trade secrets by, upon information and belief, manufacturing mats using FODS's confidential trade secret information.

39.     As remedies for SSG's misappropriation of its trade secrets, FODS seeks an award of damages for its actual loss caused by the misappropriation, as well as damages for unjust enrichment caused by the misappropriation of the trade secrets that is not

addressed in computing damages for actual loss, as provided by Tex. Civ. Prac. & Rem. Code 134A.004(a).

40.      As an alternative to lost profits, FODS seeks an award of damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for SSG's unauthorized disclosure and use of the trade secret, as authorized by Tex. Civ. Prac. & Rem. Code 134A.004(a). Given the willful and malicious nature of SSG's misappropriation, FODS also seeks exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code 134A.004(b).

## C.      Third Cause of Action: Breach of Contract.

41.      As the factual basis for its allegations, FODS incorporates the prior paragraphs of its Complaint as if set forth fully here.

42.      SSG, Spartan Mat, LLC, and Spartan Composites, LLC entered into a Settlement Agreement dated December 19, 2019. Among other things, SSG agreed not to "manufacture, market, advertise, or sell any Mats which is designed to be interlockable/interoperable with a Mat manufactured by Spartan for a period of seven (7) years from the Effective Date" of December 19, 2019.  Spartan Mat LLC manufactures the FODS trackout control mat.

43.      SSG's DiamondTrack mat is both interlockable and interoperable with the FODS trackout control mat. Accordingly, SSG has breached Section 2.2 of the Settlement Agreement by manufacturing, marketing, advertising, and selling the DiamondTrack mat. As a result of SSG's conduct and the breach of the parties' agreement, Spartan Mat and FODS have suffered damages.

-14-

**D.**      **Fourth Cause of Action: Tortious Interference With Prospective Business Relations.**

44.      As the factual basis for its allegations, FODS incorporates the prior paragraphs of its Complaint as if set forth fully here.

45.      Tortious interference with prospective relations occurs when (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) defendant's conduct was independently tortious or unlawful; (3) interference proximately caused the plaintiff's injury; and (4) plaintiff suffered actual damage or loss.

46.      There was a reasonable probability that FODS would have entered into a business relationship with Sunbelt and other customers and dealers of trackout control mats. SSG unlawfully misappropriated FODS's trade secrets, as alleged, and used those secrets to leverage its own relationship with Sunbelt, which was both wrongful and tortious. As a result of SSG's tortious conduct, FODS was prevented from contracting with Sunbelt and other dealers and contractors, and FODS has suffered damages as a result thereof.

## VI.      JURY DEMAND

47.      FODS demands a trial by jury.

## VII.      PERMANENT INJUNCTION

48.      As the factual basis for its allegations, FODS incorporates the prior paragraphs of its Complaint as if set forth fully here.

49.      Unless SSG is permanently enjoined, it will continue to profit from its theft of FODS's trade secrets. FODS therefore seeks a permanent injunction: (a) barring

Defendant SSG from disclosing and/or using FODS's trade secrets and confidential information; and (b) providing for all additional restrictions necessary to protect FODS from the harm likely to result from SSG's continued wrongful conduct.

## VIII.   PRAYER FOR RELIEF

50.   Based on the foregoing allegations, FODS prays that the Court enter judgment in FODS's favor on its claims against SSG and award FODS the following remedies against Defendant:

a.   Actual damages;
b.   Unjust enrichment for misappropriation;
c.   Reasonable royalty for misappropriation;
d.   Reasonable attorney's fees;
e.   Exemplary damages;
f.   Prejudgment and post-judgment interest as permitted by law;
g.   Costs; and
h.   Any other legal or equitable relief that FODS may be entitled to recover, including permanent injunctive relief.

DATED:  July 3, 2024

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com
**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 Telephone
214-981-3839 Facsimile

**ATTORNEYS FOR PLAINTIFFS
SPARTAN COMPOSITES, LLC,
d/b/a FODS and SPARTAN MAT, LLC**