**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| SPARTAN COMPOSITES, LLC, *d/b/a* FODS, and SPARTAN MAT, LLC, | |
| Plaintiffs, | Case No. 4:24-CV-00609-ALM |
| v. | JURY TRIAL DEMANDED |
| SIGNATURE SYSTEMS GROUP, LLC, | |
| Defendant. | |

**DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIM
TO PLAINTIFFS' COMPLAINT**

Defendant Signature Systems Group, LLC ("Defendant" or "Signature") files this Amended Answer and Counterclaim to the Complaint (Dkt. 1) filed by Plaintiffs Spartan Composites, LLC *d/b/a* FODS ("FODS") and Spartan Mat, LLC (collectively "Plaintiffs"). Except as expressly admitted below, Defendant denies each and every allegation set forth in the Complaint, including any that could be drawn from the adoption of Plaintiffs' headings. Defendant reserves the right to amend and/or supplement this Answer. Defendant responds to the numbered paragraphs of the Complaint and the Prayer for Relief as follows:

## I.      INTRODUCTION

1.      Defendant admits only that it considered acquiring FODS, LLC in 2018 and 2021, and that Plaintiffs' Complaint purports to assert claims for trade secret misappropriation. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 1.

2.    Defendant admits only that it did not acquire FODS.  Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 2.

3.    Defendant admits only that it released the DiamondTrack Mat in late 2023, and that the DiamondTrack Mat is equipped with a distinctive diamond-shaped terrain. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 3.

4.    Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Signature lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 4 and therefore denies any and all remaining allegations in paragraph 4.

## II.    THE PARTIES

5.    Admitted.

6.    Admitted.

7.    Admitted.

## III.    JURISDICTION AND VENUE

8.    Defendant admits only that this Court has jurisdiction over this lawsuit pursuant to Plaintiffs' claim arising under the Defend Trade Secrets Act. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 8.

9.    Defendant admits that this Court has personal jurisdiction over this action. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 9.

10.     Defendant admits only that it resides in and has its principal place of business in this District and that venue is proper in this District. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 10.

11.     Defendant admits only that the referenced document includes a provision under which the United States District Court for the Eastern District of Texas, Sherman Division, retains jurisdiction and venue over disputes arising therefrom. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 11.

## IV.     FACTUAL BACKGROUND

### A.     FODS

12.     Defendant admits only that FODS, LLC was in the business of manufacturing and selling composite trackout solutions. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 12 (and the paragraph immediately preceding paragraph 12) and therefore denies any and all such allegations.

13.     Denied.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 and therefore denies any and all such allegations.

15.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 and therefore denies any and all such allegations.

16.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 and therefore denies any and all such allegations.

### B.     SSG

17.     Defendant admits only that it manufactures and distributes, *inter alia*, industrial composite matting, turf protection systems, and temporary event floors, as well as provides industrial matting to support heavy vehicles, surfaces for schools and arenas, modular flooring, and basecamp flooring for military operations. Defendant further admits that its products are used in the construction industry. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 17.

18.     Defendant admits only that it considered acquiring FODS, LLC in 2018 and executed a Confidentiality Agreement with FODS, LLC in 2018.  Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 18.

19.     Denied.

20.     Defendant admits only that it considered acquiring FODS, LLC in 2021 and executed a Mutual Confidentiality Agreement with FODS, LLC in 2021. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 20.

21.     Defendant admits only that FODS provided information to Defendant in June and July 2021. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 21.

22.     Denied.

23.     Defendant admits only that FODS, LLC provided Defendant with log-in access to FODS's accounting, inventory, and Point-of-Sale software, and that such access was "unmonitored by FODS personnel." Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 23.

24.     Defendant admits only that FODS, LLC voluntarily sent its trackout mat mold to a third-party facility for inspection without taking any reasonable measures to protect what it now

claims to constitute a trade secret. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 24.

25.    Denied.

**C.    SSG Has Jumpstarted Its Trackout Control Mat Business Through Its Use of FODS's Trade Secrets.**

26.    Defendant admits only that it launched its DiamondTrack Mat in late 2023, and that the DiamondTrack Mat consists of a distinctive diamond-shaped terrain. Defendant further admits that the DiamondTrack Mat delivers unparalleled strength, durability, and effectiveness in tire deformation and sediment dislodgment. Defendant denies Plaintiffs' allegations that the DiamondTrack Mat was designed to be interlockable and/or interoperable with FODS's trackout mat. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 26.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Defendant only admits that, in 2023, Sunbelt continued its long-standing relationship as a customer of Defendant by carrying and advertising DiamondTrack Mats. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 30 and therefore denies any and all such allegations.

## V.    CAUSES OF ACTION

**A.    First Cause of Action: Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836**

31.    Defendant repeats and realleges its responses to paragraphs 1-30 as though fully set forth herein.

32.    Defendant admits only that Plaintiffs' Complaint purports to allege claims for misappropriation of trade secrets. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 32.

33.    Denied.

34.    Defendant admits only that Plaintiffs purport to seek an award for actual damages and unjust enrichment for trade secret misappropriation under 18 U.S.C. § 1836. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 34.

35.    Defendant admits only that Plaintiffs' Complaint purports to seek an award of damages for trade secret misappropriation under 18 U.S.C. § 1836. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 35.

**B.    <u>Second Cause of Action: Misappropriation of Trade Secrets in Violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code 134A, *et seq.*</u>**

36.    Defendant repeats and realleges its responses to paragraphs 1-35 as though fully set forth herein.

37.    Defendant admits only that Plaintiffs' Complaint purports to allege claims for misappropriation of trade secrets. Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 37.

38.    Denied.

39.     Defendant admits only that Plaintiffs' Complaint purports to seek an award of actual damages as well as damages for unjust enrichment caused by the alleged misappropriation of its trade secrets under Tex. Civ. Prac. & Rem. Code 134A.004(a). Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 39.

40.     Defendant admits only that Plaintiffs' Complaint purports to seek, as an alternative to lost profits, an award of a reasonably royalty under Tex. Civ. Prac. & Rem. Code 134A.004(a). Defendant denies that there is any basis for Plaintiffs' Complaint and further denies that Plaintiffs are entitled to any of the relief requested. Except as expressly admitted, Defendant denies any and all remaining allegations in paragraph 40.

**C.     Third Cause of Action: Breach of Contract.**

41.     Defendant repeats and realleges its responses to paragraphs 1-40 as though fully set forth herein.

42.     Defendant admits only that it entered into a Settlement Agreement with an Effective Date of December 19, 2019.  Except as expressly admitted, Defendant denies any and all remaining allegations contained in Paragraph 42.

43.     Denied.

**D.     Fourth Cause of Action: Tortious Interference With Prospective Business Relations.**

44.     Defendant repeats and realleges its responses to paragraphs 1-43 as though fully set forth herein.

45.     The allegations contained in paragraph 45 consist of legal conclusions that do not require an admission or denial, and are therefore denied.

46.    Denied.

## VI.    JURY DEMAND

47.    Paragraph 47 does not contain facts that Defendant must admit or deny. Defendant likewise demands a jury trial on all claims and defenses so triable.

## VII.    PERMANENT INJUNCTION

48.    Defendant repeats and realleges its responses to paragraphs 1-47 as though fully set forth herein.

49.    Denied.

## VIII.    PRAYER FOR RELIEF

50.    Defendant denies that Plaintiffs are entitled to the relief sought in paragraphs 50(a)-(h) of Plaintiffs' Complaint.

## AFFIRMATIVE DEFENSES

51.    Defendant asserts the following affirmative defenses, undertaking the burden of proof only as to those defenses required by law, regardless of how such defenses are denominated here.

52.    Defendant reserves the right to rely upon any additional defenses that become available or apparent during discovery, and reserves the right to amend this Answer and to assert such additional defenses or, if appropriate, remove defenses as discovery proceeds.

53.    Defendant asserts each of these affirmative defenses in the alternative, without admitting that Defendant is in any way liable to Plaintiffs, that Plaintiffs have or will be injured or damaged in any way, or that Plaintiffs are entitled to any relief whatsoever.

54.    As a defense to the Complaint and each and every allegation contained therein, Defendant alleges as follows:

9

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

55.    The Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**
**(Independent Development)**

56.    Defendant alleges that it researched and developed its DiamondTrack Mat wholly independent from, and without any knowledge of, FODS's purported confidential trade secrets.

**THIRD AFFIRMATIVE DEFENSE**
**(Public Information)**

57.    Defendant alleges that Plaintiffs' trade secrets are publicly known and thus do not constitute trade secrets under either the Defend Trade Secrets Act, 18 U.S.C. § 1839(3)(B), or the Texas Uniform Trade Secrets Act, 134A.002(6)(B).

58.    For example, FODS filed U.S. Patent 8,061,927 for its "Vehicle Trackout Mat" on November 22, 2011, so information about the design of FODS Trackout Mat has been in the public domain since 2011.

**FOURTH AFFIRMATIVE DEFENSE**
**(Failure to Keep Information Secret)**

59.    Defendant alleges that FODS voluntarily sent its trackout mat mold to a third-party facility for inspection without taking any reasonable measure(s), such as a confidentiality agreement with said third party, to protect what it now claims to constitute a trade secret. Accordingly, Plaintiffs' manufacturing process is not a trade secret under either the Defend Trade Secrets Act, 18 U.S.C. § 1839(3)(A), or the Texas Uniform Trade Secrets Act, 134A.002(6)(A).

60.    Defendant likewise alleges that FODS did not take reasonable measures to protect its purportedly confidential business-related information because, by Plaintiff's own admission, FODS did not take any steps to monitor access to and use of that information. Accordingly,

10

Plaintiff's business information is not a trade secret under either the Defend Trade Secrets Act, 18 U.S.C. § 1839(3)(A), or the Texas Uniform Trade Secrets Act, 134A.002(6)(A).

## FIFTH AFFIRMATIVE DEFENSE
### (Equitable Doctrines)

61.    Plaintiffs' allegations of trade secret misappropriation, breach of contract, and tortious interference with potential business relations is barred in whole or in part by one or more of the following doctrines: (1) equitable estoppel, (2) acquiescence, (3) waiver, and/or (4) unclean hands.

## SIXTH AFFIRMATIVE DEFENSE
### (Offset)

62.    Plaintiffs' alleged damages for breach of contract are barred, in whole or in part, by the doctrine of offset. The damages arising from Plaintiffs' failure to abide by its obligations under the Settlement Agreement should be deducted from any sums owed to Plaintiffs.

## SIGNATURE'S COUNTERCLAIM

Counterclaim Plaintiff Signature Systems Group, LLC ("Signature"), pleads the following counterclaim against Counterclaim Defendants Spartan Composites, LLC *d/b/a* FODS and Spartan Mat, LLC (collectively "Spartan" or "Counterclaim Defendants"), as follows:

## THE PARTIES

1.    Counterclaim Plaintiff Signature Systems Group, LLC is a Delaware limited liability company with its principal place of business at 1201 Lakeside Parkway, Suite 150, Flower Mound, Denton County, Texas 75208. Signature developed and manufactures the DiamondTrack Mat.

11

2. Counterclaim Defendant Spartan Composites, LLC *d/b/a* FODS is an Arizona limited liability company with its principal place of business at 135 Gus Hipp Boulevard, Rockledge, Florida 32955.

3. Counterclaim Defendant Spartan Mat, LLC is an Arizona limited liability company, having an office and place of business at 2576 E. Melrose, Gilbert, Arizona 85297.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Signature's counterclaim under 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 13. Counterclaim Defendants have submitted to the personal jurisdiction of this Court.

5. Signature and Counterclaim Defendants agreed to venue in this judicial district in an agreement between the parties that forms, in part, the basis for both Counterclaim Defendants' claims and Signature's counterclaim. *See* Settlement Agreement, ¶ 16 ("With respect to disputes arising from this Settlement Agreement, the United States District Court for the Eastern District of Texas, Sherman Division will retain jurisdiction and venue, to which the Parties consent and waive their right to any other venue.").

## BACKGROUND

A. **Signature Systems Group, LLC**

6. Signature was founded in 1998 in Manhattan, New York, to sell temporary flooring products. Signature's success quickly saw it expand into the engineering, manufacturing, and distribution of industry-leading composite mats, fencing, turf protection systems, and portable event flooring used to create safe and reliable site access and ground protection for an array of

12

applications worldwide. Today, Signature's mats are primarily used in the construction, oil and gas, transmission and distribution, and stadium and venue industries.[1]

7.      In 2007, seven years before FODS began developing the FODS Trackout Mat, Signature released its first composite mat, the DuraDeck Mat. To date, the DuraDeck Mat is still one of the best-selling ground protection mats on the market due to its durability, wide range of applications, 10-year lifespan, and excellent return on investment compared to traditional plywood mats. Signature's success and extensive experience in the composite matting industry has enabled Signature to develop and introduce a diverse range of composite products, including:

| Product | Year Released |
| --- | --- |
| DuraDeck | 2007 |
| MegaDeck | 2010 |
| SignaRoad | 2015 |
| MegaDeck HD+ | 2022 |
| DiamondTrack | 2023 |

8.      Each of Signature's composite matting products took years of effort, investment, and research and development before they were offered on the market. Further, many of Signature's mats required Signature to order special machinery and equipment to manufacture.

9.      For instance, in 2018, before FODS and Signature began purchase negotiations, Signature issued a purchase order for additional equipment to expand its capacity to produce its MegaDeck products. This equipment ("Hulk 5") was commissioned in 2019. Signature also uses the Hulk 5 to manufacture its DuraDeck and DiamondTrack Mats.

10.     Signature leveraged its extensive experience in compression molding, composite engineering, manufacturing, and resin formulation technology to produce the DiamondTrack Mat.

---

[1] *See Our History*, SIGNATURE SYS. GRP., https://www.signature-systems.com/history.

Specifically, Signature used its DuraDeck Mat—Signature's industry-leading composite construction mat launched in 2007—as the formulation for its DiamondTrack Mat.

11. Both Signature's DuraDeck Mat and DiamondTrack Mat are made from a blend of fully recyclable high-density polyethylene and linear, low-density polyethylene. Additionally, both mats are manufactured with the same compression-molding process and use the same connection system.

12. Signature's DiamondTrack Mat is further overlaid with an innovative diamond-shaped terrain of varying heights, designed to promote elastic tire deformation and effectively dislodge sediment before vehicles leave a jobsite. This diamond-shaped design was not arrived at arbitrarily; rather, it was the result of extensive research and rigorous testing of several prototypes.

13. Signature released the DiamondTrack Mat in late 2023.

14. To manufacture the DiamondTrack Mat, Signature relies on the same composite blends, machinery, and processes it has used for its earlier-released products, all of which were in place before Signature and FODS first began negotiations in 2018.  For instance:

    a. Signature manufactures its DiamondTrack Mats using the same composite blend it uses for its DuraDeck products, which it has been using since 2007;

    b. Signature uses the same mold pouring process to make its DiamondTrack Mats as it uses to make its DuraDeck, MegaDeck, and SignaRoad Mats, which it has been doing since 2007, 2010, and 2015, respectively; and

    c. Signature manufactures its DiamondTrack Mats using the same machine it uses to manufacture its DuraDeck and MegaDeck Mats, which was purchased in 2018.

**B.**    **FODS, LLC**

15. FODS, LLC was founded in late 2011, approximately four years after Signature released its DuraDeck Mat. FODS, like Signature, sold composite mats that are primarily used in

the construction industry. Upon information and belief, FODS released its trackout mat in mid-2016.

16.    From at least June 2020 to August 2023, FODS, LLC was Signature's customer, purchasing both Signature's DuraDeck Mats and connectors. During that time, upon information and belief, FODS used Signature's DuraDeck connectors to interlock its FODS trackout mats.

**C.    2018 and 2021 Discussions Between Signature and FODS**

17.    In late 2018 and again in 2021, Signature and FODS began discussing the possibility of Signature acquiring FODS. In both instances, Signature and FODS executed confidentiality agreements to facilitate the exchange of information during the due diligence period.

18.    The 2018 Confidentiality Agreement did not cover any "information which (a) was already available to [Signature] or any Representatives prior to its disclosure to [Signature] by [FODS], (b) is or becomes generally available to the public, (c) becomes available to [Signature] or any Representative, to [Signature]'s knowledge, on a non-confidential basis from a source other than [FODS], or (d) is independently developed by Signature or any Representative without use of or reference to [the] [i]nformation."

19.    The 2021 Confidentiality Agreement did not cover any "information that: (a) is publicly known at the time of disclosure to [Signature]; (b) becomes public knowledge without breach of this Agreement by [Signature]; (c) is known to [Signature] at the time of the disclosure and not subject to any restriction; (d) is lawfully obtained without restriction from a third party not affiliated with [either FODS or Signature]; (e) is independently developed by [Signature] by employees of [Signature] who have not had access to the Confidential Information."

20.     During negotiations in 2021, Signature and FODS exchanged customer lists.  At the time, Sunbelt was identified on Signature's customer list.

21.     Prior to the discussions between Signature and FODS, Sunbelt had a nearly decade-long tenure as one of Signature's customers. In fact, Sunbelt purchases Signature's entire product line.

**D.     Spartan**

22.     Founded in 2012, Spartan Mat also develops composite construction mats.  In 2018, Spartan Mat's founder, Justin Thelin, formed Spartan Composites.

23.     In July 2019, Signature filed suit against Spartan Mat, LLC and Spartan Composites, LLC in the United States District Court for the Eastern District of Texas, bringing claims for: (1) unauthorized and unlawful use of photographs of Signature's industrial mat products and distinctive trade dress in Spartan's promotional materials for its own competing products; (2) unauthorized and unlawful use of Signature's trade dress; and (3) patent infringement.[2]

24.     To conclude the aforementioned litigation, Signature and Spartan entered into a settlement agreement ("Settlement Agreement") with an effective date of December 19, 2019.

25.     Pursuant to Section 2.1.3 of the Settlement Agreement, Spartan promised to not "manufacture, market, advertise, or sell any Mat which is designed to be interlockable/interoperable with a Signature Mat for a period of seven (7) years from the Effective Date." The parties further stipulated that the Settlement Agreement "will be binding upon and will inure to the benefit of the Parties to this Agreement and their respective officers, directors,

---

[2] *See Signature Sys. Grp., LLC v. Spartan Mat, LLC et al.*, No. 4:19-cv-00441-SDJ (E.D. Tex. July 18, 2019).

stockholders, agents, employees, servants, predecessors, successors, assigns, parent companies, subsidiaries, affiliates, heirs, personal representatives, attorneys, and all other persons, firms, companies, associates, or partnerships."

### E.    Spartan Acquires FODS

26.    Prior to 2024, FODS, LLC was not owned by Spartan Composites, LLC or Spartan Mats, LLC.

27.    Upon information and belief, in early 2024, Spartan acquired FODS, LLC. Spartan was a former subcontractor for FODS, LLC. In particular, upon information and belief, Spartan manufactured the FODS Trackout Mat at its manufacturing facility, beginning in 2019 and until early 2024.

### F.    Counterclaim Defendants' Interference with Signature's Prospective Business Relationships

28.    Upon information and belief, Counterclaim Defendants have used the filing of this lawsuit as a means to tortiously interfere with Signature's business relationships, including but not limited to Ferguson Enterprises, Ferguson Waterworks, and related entities (collectively, "Ferguson").

29.    Ferguson and Signature have had a long-standing relationship.  Ferguson, for example, began purchasing Signature's MegaDeck Mat in December 2017.

30.    In May 2024, Ferguson reached out to Signature and expressed an interest in purchasing the DiamondTrack Mat.  Signature then sent samples of its DiamondTrack Mat to Ferguson facilities, so Ferguson could investigate the product and begin the qualification/field testing process.  Upon passing Ferguson's qualification/field testing, Ferguson informed Signature that it preferred the DiamondTrack Mat over the FODS Trackout Mat.

31.    Signature and Ferguson then began negotiating specific information about a potential purchase, including, e.g., national exclusivity, custom color, and private labeling.

32.    Upon information and belief, Counterclaim Defendants were aware that Ferguson and Signature had a potential business relationship regarding Signature's DiamondTrack Mats, and knew that Ferguson was intending to purchase Signature's DiamondTrack Mat.

33.    Upon information and belief, in or around June 2024, Counterclaim Defendants directly contacted Ferguson to inform it of threatened litigation against Signature, to prevent losing Ferguson sales to Signature.  On information and belief, Counterclaim Defendants' improper communications with Ferguson in or around June 2024 prevented Signature from entering into a business relationship regarding the DiamondTrack Mats.

34.    Shortly thereafter, Ferguson suddenly stopped communicating with Signature. Signature was later informed that Ferguson was concerned about the current litigation filed against Signature involving the DiamondTrack Mat.

35.    In November 2024, Signature reached out to Ferguson again to offer a very attractive program to incentivize Ferguson to purchase its DiamondTrack Mats.  Signature and Ferguson began finalizing quantities, pricing, and delivery terms for the prospective purchase.

36.    Upon information and belief, Counterclaim Defendants renewed their negative campaign against Signature at the end of 2024 when it learned that Signature offered Ferguson an incentivized program to purchase DiamondTrack Mats. In addition to threatened retaliation, Counterclaim Defendants, upon information and belief, falsely told Ferguson that Signature is doing business with multiple distributors in Colorado that are in direct competition with Ferguson, in order to disparage Signature in the marketplace and sour Ferguson's business relationship with Signature.

37.    On information and belief, in January 2025, after making significant headway in finalizing the terms of a purchase order, Ferguson again informed Signature that it decided to not purchase the DiamondTrack Mats due to Counterclaim Defendants' ongoing lawsuit against Signature.  In fact, in January 2025, Signature was informed that Ferguson decided not to purchase its DiamondTrack Mats because Ferguson had significant concerns of retaliation from Counterclaim Defendants if it completed its DiamondTrack Mat order.  In March 2025, Ferguson again reiterated its position for reasons previously discussed.

38.    Upon information and belief, Counterclaim Defendants are continuing to leverage their lawsuit against Ferguson and other prospective business relationships of Signature.

### COUNT I
### Breach of Contract

39.    Signature repeats and realleges the allegations set forth in paragraphs 1-26 of its Counterclaim as though fully set forth herein.

40.    Spartan entered into the aforementioned Settlement Agreement with Signature, in which Spartan agreed, among other things, not to "manufacture, market, advertise, or sell any Mat which is designed to be interlockable/interoperable" with any Signature Mat.

41.    Prior to its purchase by Spartan, FODS purchased Signature's DuraDeck Mats and DuraDeck connection hardware, and upon information and belief used Signature's DuraDeck Mats and DuraDeck connection hardware in conjunction with FODS's trackout mat, both of which include identical hole placement allowing connections. Accordingly, upon information and belief, FODS had designed its mats to be interlockable/interoperable with the DuraDeck Mat and the DuraDeck connection system Signature has used since 2007—the same connection system used in Signature's DiamondTrack Mat.

19

42.     Spartan has breached Section 2.1.3 of the Settlement Agreement at least upon its acquisition of FODS in early 2024 because it now manufactures markets, advertises, and sells the FODS Trackout Mat, which, upon information and belief, is designed to be interlockable/interoperable with at least Signature's DuraDeck Mat.  As a result of Spartan's breach of the parties' Settlement Agreement, Signature has suffered damages.

43.     Spartan also manufactures, markets, advertises, and sells the Scout Ground Protection Mat ("Scout GPM"). Upon information and belief, Scout GPM is the same size as Signature's DuraDeck Mat, and both Mats include similar hole placement for compatibility with two-way and four-way connectors. Since acquiring FODS, Spartan began selling the Scout GPM under both FODS and Spartan tradenames. Upon information and belief, the Scout GPM is designed to be interoperable and/or interlockable with Signature's DuraDeck mat. Spartan is thus in breach of Section 2.1.3 of the Settlement Agreement by and through the manufacture, advertisement, and sale of the Scout GPM in its individual capacity and *d/b/a* FODS. As a result of Counterclaim Defendants' conduct and breach of the parties' Settlement Agreement, Signature has suffered damages.

44.     In fact, it is possible that Spartan has been breaching the Settlement Agreement from the date of execution, December 19, 2019.   At that time, Spartan was the manufacturer/subcontractor for FODS. After signing the Settlement Agreement, Spartan continued to manufacture the FODS Trackout Mat, despite it being interlockable and/or inoperable with at least Signature's DuraDeck Mat.

## COUNT II
### Tortious Interference with Prospective Business Relations

45.     Signature repeats and realleges the allegations set forth in paragraphs 1-44 of its Counterclaim as though fully set forth herein.

46.     Tortious interference with prospective business relations occurs when (1) there was a reasonable probability that the party making the allegation would have entered into a business relationship with a third party; (2) the accused party's conduct was independently tortious or unlawful; (3) the interference proximately caused the injury to the party making the allegation; and (4) the party making the allegation suffered actual damage or loss.

47.     There was a reasonable probability that Ferguson would have purchased Signature's DiamondTrack Mats, as early as mid-2024 and as late as March 2025, but for Counterclaim Defendants' tortious conduct, which includes, at least: (1) telling Ferguson not to purchase Signature's DiamondTrack mats, because of pending/ongoing litigation; (2) making veiled threats of retaliation against Ferguson, if Ferguson purchased DiamondTrack mats from Signature; and (3) falsely telling Ferguson that Signature was working with multiple distributors in Colorado who are in direct competition with Ferguson.

48.     Despite making substantial headway in finalizing a sale of DiamondTrack Mats to Ferguson—going so far as to negotiate pricing, quantity and delivery terms—Ferguson decided not to place the purchase order, based on the tortious or unlawful conduct by Counterclaim Defendants.

49.     Due to Counterclaim Defendants' tortious or unlawful conduct regarding Signature and the present litigation, Ferguson and other prospective business relations did not purchase DiamondTrack from Signature, and Signature has suffered damages as a result thereof.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff prays that the Court enter judgment against Counterclaim Defendants granting the following relief:

A. Actual damages;

B. Lost profits;

C. Reasonable attorneys' fees;

D. Pre- and post-judgment interest as permitted by law;

E. Costs; and

F. Any other legal or equitable relief that Signature may be entitled to recover, including but not limited to permanent injunctive relief.

22

## DEMAND FOR JURY TRIAL

Counterclaim Plaintiff demands a trial by jury on all issues properly triable to a jury in this case.

Dated:  March 7, 2025

Respectfully submitted,

By: */s/ David W. Morehan*
David W. Morehan (*Lead Attorney*)
Texas Bar No. 24065790
Robert H. Reckers
Texas Bar No. 24039520
SHOOK, HARDY & BACON L.L.P.
600 Travis Street, Suite 3400
Houston TX 77002
Phone: 713-227-8008
Fax: 713-227-9508
rreckers@shb.com
dmorehan@shb.com

B. Trent Webb (*pro hac vice* forthcoming)
Evan Weidner (*pro hac vice* forthcoming)
Brenna L. Kingyon (*pro hac vice*
forthcoming)
2555 Grand Boulevard
Kansas City, MO 64108
Phone: 816-474-6550
Fax: 816-421-5547
bwebb@shb.com
eweidner@shb.com
bkingyon@shb.com

***Counsel for Defendant***
***Signature Systems, Group, LLC***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and LR 5.3, I hereby certify that, on March 7, 2025 all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

By: /s/ *David W. Morehan*

23