# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SPARTAN COMPOSITES, LLC, d/b/a § <br> FODS, and SPARTAN MAT, LLC, § <br> § <br> *Plaintiffs*, § <br> v. § <br> § <br> SIGNATURE SYSTEMS GROUP, LLC, § <br> § <br> *Defendant*. § | Civil Action No. 4:24-cv-609 <br> Judge Mazzant <br> **SEALED** |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Signature Systems Group, LLC's Corrected Motion to Exclude and Brief in Support of its *Daubert* Motion to Exclude Expert Opinions of Dr. William Howard (the "Motion") (Dkt. #70). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

The factual background of this case has been thoroughly examined in this Court's prior ruling and needs no repeating here (Dkt. #156). Pertinent to the pending Motion is Plaintiffs' retention of Dr. William S. Howard ("Dr. Howard"), a mechanical and electrical engineer and the owner and president of Stability Technology, Inc., to opine on the existence of two trade secrets: (a) the manner in which Plaintiffs' FODS Trackout mat is constructed; and (b) the combination of the shape, size, structure, composition, and placement of certain mechanisms in Plaintiffs' FODS Trackout mat (Dkt. #70-1 at pp. 6–7). In his expert report, Dr. Howard states that he conducted in-person analysis and reviewed legal material to arrive at his belief that Plaintiffs accurately described certain manufacturing processes as "trade secrets" under the Texas Uniform Trade Secrets Act

("TUTSA") and the Defend Trade Secrets Act ("DTSA") (Dkt. #70-1 at pp. 12–14). TEX. CIV. PRAC. & REM. CODE § 134A; 18 U.S.C. § 1836.

Defendant contends that Dr. Howard failed to make an appropriate and independent analysis of Plaintiffs' alleged trade secrets, arguing that his testimony would improperly lend undue credibility to Defendant's trade secrets claim (*See* Dkt. #70 at pp. 5–6). Specifically, Defendant suggests that Dr. Howard's analysis improperly ignores an array of public disclosure concerns that prevent the existence of any relevant "secrets" altogether (*See* Dkt. #70 at pp. 5–6). Plaintiffs respond that Dr. Howard presented a sufficient analysis of available patents and of the potential public exposure of Plaintiffs' alleged trade secrets (Dkt. # 111 at pp. 9–11).

On August 12, 2025, Defendant moved to strike and exclude Dr. Howard's statements contained in his expert report under Federal Rule of Evidence 702 (Dkt. #70). On August 27, 2025, Plaintiffs filed their Corrected Response (Dkt. #111). On September 2, 2025, Defendant filed its Reply (Dkt. #118).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following non-exhaustive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

To determine whether Dr. Howard's expert testimony is admissible, the Court considers both Rule 702 and Rule 403 of the Federal Rules of Evidence. The Court first evaluates whether Dr. Howard's challenged opinions satisfy the requirements of Rule 702. *See* FED. R. EVID. 702. If his opinions meet the requirements under that Rule, the Court will then assess under Rule 403 whether the probative value of Dr. Howard's opinions is substantially outweighed by any risk of unfair prejudice. *See* FED. R. EVID. 403. The Court addresses each issue in turn below.

I. **Admissibility Under Rule 702**

Rule 702 permits testimony by an expert "who is qualified by knowledge, skill, experience, training, or education" to be used at trial if it is more likely than not that: (1) the expert's specialized knowledge is helpful to the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *See* FED. R. EVID. 702. For the reasons below, Dr. Howard's testimony satisfies these criteria under Rule 702.

    A. **Dr. Howard is qualified.**

Neither party disputes that Dr. Howard holds multiple reputable degrees in and related to the subject of mechanical engineering, is a practicing design engineer specializing in industrial machinery, and is a seasoned mechanical and electrical engineer with decades of experience (Dkt. #70-1 at p. 7). Defendant does not challenge Dr. Howard's credentials directly but argues that the expert incorrectly applied his experience by ignoring and selectively utilizing pieces of evidence to arrive at his conclusions (Dkt. #70 at p. 15). The Court concludes that Dr. Howard's background,

certifications, and current practices establish that he is qualified under Rule 702 to provide opinions on trade secrets relating to mechanical engineering.

### B.	Dr. Howard's specialized knowledge will help the trier of fact.

Neither party disputes that Dr. Howard possesses knowledge beyond that of a layman. Defendant instead takes issue with the inconsistent application of Dr. Howard's expertise to different pieces of evidence (Dkt. #70 at p. 2). The Court finds that Dr. Howard's testimony may assist the jury by explaining why he believes Plaintiffs are in possession of multiple "trade secrets" as defined by TUTSA and DTSA. TEX. CIV. PRAC. & REM. CODE § 134A; 18 U.S.C. § 1836. This issue involves consideration of a variety of technical and legal factors extending far beyond one's innate "common sense and knowledge," and Dr. Howard's opinion is admissible under Rule 702 because it attempts to bridge that gap with his unique specialization. *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). Whether Dr. Howard's specialization is appropriately or reliably applied to the facts of this case will be determined in short order below.

### C.	Dr. Howard's testimony is based on sufficient facts or data.

Dr. Howard relied upon in-person analysis, interviews with designers, consideration of the mechanical engineering design of the relevant equipment, and review of patents and legal literature on trade secrets to arrive at his conclusions (Dkt. #70-1 at pp. 12–14). TEX. CIV. PRAC. & REM. CODE § 134A; 18 U.S.C. § 1836. Defendant argues that Dr. Howard's testimony is critically flawed because it fails to analyze the effect that certain patents have on the existence of Plaintiffs' alleged trade secrets (Dkt. #70 at p. 2). Plaintiffs respond that Dr. Howard reviewed a sufficient number of patents and addressed the issue of public exposure at various points in his report (Dkt. #111 at p. 9). As "the Federal Rules of Evidence do not require an expert to consider *all* relevant facts or data[,]" the Court finds that Defendant's challenge to the depth or scope of Dr. Howard's consideration

speaks to the weight of the testimony, not its admissibility. *Thomas v. City of Port Arthur, Tex.*, No. 1:23-CV-282, 2025 WL 377704, at *5 (E.D. Tex. Jan. 31, 2025) (emphasis in original). In this context, Dr. Howard's testimony is admissible at trial, as it is sufficiently grounded in: (a) his consideration of the problem of public disclosure; (b) his specialized experience; and (c) his varied interactions with the "trade secrets" and their related legal documentation.

      **D.**      **Dr. Howard's testimony is the product of reliable principles and methods reliably applied to the facts of the case.**

The Court now turns to the crux of Defendant's Motion: whether Dr. Howard's testimony is supported by solid and reliable principles and methods and further reliably applied to the facts of the case. Defendant believes that Dr. Howard inadequately explains how certain patents or products have not critically jeopardized the potential "secret" status of Plaintiffs' alleged trade secrets (Dkt. #70 at p. 5). Defendant centers this argument around the well-regarded legal principle that "[a] trade secret . . . cannot possibly be patented." *Newport Indus. v. Crosby Naval Stores*, 139 F.2d 611, 613 (5th Cir. 1944). Defendant further characterizes Dr. Howard's methodology as little more than blind faith and weaponized ignorance, citing deposition testimony from Plaintiffs' corporate representative that addresses similar subject matter from an alternative perspective (Dkt. #70 at p. 6; Dkt. #118 at p. 5). Plaintiffs, on the other hand, highlight Dr. Howard's comprehensive analysis of a relevant patent and his repeated consideration of the issue of public disclosure (Dkt. #111 at pp. 8–10; Dkt. #70-1 at p. 58).

The Court finds that the existence of certain patents and alternative products have not precluded Dr. Howard's expert opinion. Nor has the personal interpretation of a patent by Plaintiffs' corporate representative rendered Dr. Howard's conclusions inadmissible at trial. Rather, Dr. Howard's methodology is reliable and suitable for the purpose it serves. Moreover, the

6

Court finds that Dr. Howard applied his methodology consistently and transparently to all the facts he examined. While Dr. Howard did not specifically address a wide array of patents or products that might have undermined his analysis, "[t]he court is confident that counsel will, by skillful cross-examination, illuminate for the jury each error and omission in [his] analysis." *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 7665423, at *3 (E.D. Tex. July 19, 2016). The factual bases and considerations of Dr. Howard's opinions are issues of credibility, not admissibility, and to the extent Defendant believes Dr. Howard should have conducted a more thorough or complete analysis, those criticisms should be raised at trial. *See United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019) (quoting *Daubert*, 509 U.S. at 594).

## II.     Admissibility under Rule 403

Having found that Dr. Howard's opinions are admissible under Rule 702, the Court next considers whether they should be excluded under Rule 403. That rule allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Defendant argues that Dr. Howard's "counterfactual opinion" should not be permitted to reach the ears of the jury (Dkt. #70 at p. 15). Plaintiffs respond that any weaknesses in Dr. Howard's analysis can be properly addressed through cross-examination and competing evidence, not a motion to exclude (Dkt. #111 at p. 1).

Plaintiffs' argument takes the day. Dr. Howard's testimony is the result of purposeful and diligent action, imbuing it with probative value wherever Plaintiffs' alleged "trade secrets" are concerned. As noted above, concerns about Dr. Howard's due diligence or the extent of his analysis

should be addressed at trial, not exclusion under Rule 403. *Hodge*, 933 F.3d at 477. Thus, the Court finds that neither Rule 702 nor Rule 403 bars Dr. Howard's testimony.

## CONCLUSION

It is therefore **ORDERED** that Defendant Signature Systems Group, LLC's Corrected Motion to Exclude and Brief in Support of its *Daubert* Motion to Exclude Expert Opinions of Dr. William Howard (Dkt. # 70) is hereby **DENIED**. Dr. Howard is qualified and his testimony is admissible under Rule 702 to the extent he opines about Plaintiffs' possession of genuine "trade secrets."

**IT IS SO ORDERED.**

SIGNED this 10th day of November, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE