# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SPARTAN COMPOSITES, LLC d/b/a FODS, and SPARTAN MAT, LLC, § § § | |
| Plaintiffs, § | Civil Action No. 4:24-cv-609 |
| v. § | Judge Mazzant |
| § | **SEALED** |
| SIGNATURE SYSTEMS GROUP, LLC, § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Spartan Composites, LLC's d/b/a FODS and Spartan Mat LLC's ("Plaintiffs") Emergency Motion for Interim Preliminary Injunctive Relief (the "Motion") (Dkt. #230). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The underlying facts are more thoroughly set forth in the Court's October 21, 2025 Memorandum Opinion and Order and need no repeating here (Dkt. #154). Following a four-day trial in which Defendant was found to have misappropriated three of Plaintiffs' trade secrets, Plaintiffs filed the pending Motion, asking the Court to enter a preliminary injunction preventing Defendant from "marketing, selling, renting, leasing, or manufacturing its DiamondTrack mat until final judgment is issued" (Dkt. #230 at p. 1). The Motion is opposed (Dkt. #233). Plaintiffs have filed a reply (Dkt. #235).

## LEGAL STANDARD

A preliminary injunction seeks to "prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Miss. Power & Light Co. v. United Gas Pipe*

*Line*, 760 F.2d 618, 621 (5th Cir. 1985). Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d). A plaintiff seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

## ANALYSIS

Plaintiffs urge the Court to restrain Defendant for two primary reasons: first, to prevent any alleged erosion of the spirit behind the jury's verdict, and second, to prevent Defendant from "flooding the market" with its own line of "DiamondTrack" trackout mats (*See* Dkt. #230 at p. 1). Defendant argues that the proposed injunction is unnecessary and improper in scope (*See* Dkt. #233 at pp. 6–7). The Court must now determine whether Plaintiffs have requested a sufficiently narrow injunctive order and have further offered sufficient proof to satisfy the four elements necessary to support a preliminary injunction. As explained below, Plaintiffs have carried their burden in both respects.

**I.    Scope**

At the outset of its analysis, the Court notes again that Plaintiffs seek an injunctive order against Defendant specifically covering its "marketing, selling, renting, leasing, or manufacturing its DiamondTrack mat" (Dkt. #230 at p. 1). Defendant contests the scope of the proposed order, stating that the "breadth of emergency injunctive relief Plaintiffs seek does not even comport with the issues on which they succeeded at trial" (Dkt. #233 at p. 8). In structuring this argument,

2

Defendant places great emphasis on the jury's rejection of a trade secret in the collective manner in which Plaintiffs' FODS mat was constructed (*See* Dkt. #211). Defendant argues that this Court risks over-enjoining it, and that "such an injunction amounts to an attack on the jury's finding that no trade secret exists in the size, shape, structure, composition, and single-piece manufacture of a trackout control mat" (Dkt. #233 at p. 9). As an alternative to Plaintiffs' proposed relief, Defendant asks that it be enjoined only from utilizing Plaintiffs' customer lists, marketing, advertising, sales, or pricing strategies to generate sales for its DiamondTrack mat (*See* Dkt. #233 at p. 9).

The Court remains ever mindful of the legal requirement that "an injunction must be narrowly tailored to remedy the specific action which gives rise to the order." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 616 (5th Cir. 2017) (citation modified). Accordingly, it turns to the jury charge to determine the proper scope of Plaintiffs' requested relief. While the jury found that the collective manner in which the FODS trackout mat was created did not constitute a trade secret, it also found that the FODS trackout mat contained a trade secret in its proprietary molding process (Dkt. #211 at p. 1). To be clear, the jury expressly found that the unique molding process of the FODS trackout mat constituted a trade secret, and that Defendant misappropriated that trade secret (Dkt #211 at p. 3). In light of the jury's findings, the Court is satisfied that any proposed injunction pertaining to the marketing, selling, renting, leasing, or manufacturing of the DiamondTrack mat is sufficiently narrowly tailored to remedy any potential injustice associated with "the action which gives rise to the order," or the misappropriation of Plaintiffs' alleged trade secrets. *Id.*

## II.    Substantial Likelihood of Success on the Merits

The first element to address in the context of an injunction is whether Plaintiffs can demonstrate a substantial likelihood of success on the merits. In the context of this case, analysis

3

of this element appears deceptively simple. After all, Plaintiffs have already succeeded at trial on the merits of many of their trade secret misappropriation claims. Most pertinent to the pending motion, Plaintiffs have succeeded on their claim that the FODS trackout mat contained a proprietary molding process that constituted a trade secret, and that the trade secret was misappropriated by Defendant (*See* Dkt. #211). Plaintiffs' success at trial, however, is not the end of the story in the context of this initial element.

Plaintiffs cite a prior decision by this Court, *Jostens, Inc. v. Hammons*, and ask that the Court find in their favor on this element. No. 4:20-CV-00225, 2022 WL 2392311, at *2 (E.D. Tex. July 1, 2022). In *Jostens*, this Court determined that a party had effectively rendered moot any question regarding a "substantial likelihood of success on the merits" because it had "succeeded on the merits for all of its claims." *Id*. Here, Plaintiffs have not succeeded on the merits of all of their claims; rather, they have succeeded on a mere majority of them (*See* Dkt. #211). This is a distinguishment without a difference, however, as the requested injunction directly relates to the claims on which Plaintiffs have succeeded. The jury's finding of the above-mentioned trade secret is naturally implicated by Defendant's continued marketing, selling, renting, leasing, or manufacturing of a product that allegedly misappropriates it. As a result, the Court once again finds that this element has been nullified by a party's success at trial. *Id*. (noting further that "there is support for a post-trial preliminary injunction in cases where one is necessary to protect the jury's verdict while briefing and argument continues on post-trial damage issues" (citation modified)). While the Court is in active anticipation and receipt of post-trial motions, it declines to preemptively uproot the findings of the jury, or to permit the potential subversion of such findings on that basis alone.

### III. Irreparable Harm

The second element asks whether Plaintiffs have put forth evidence showing a substantial threat of irreparable harm in the absence of an injunctive order. *See Nichols*, 532 F.3d at 372. In addressing this element, "[t]he Court looks not to the magnitude of the harm allegedly suffered by [a party], but the irreparability of it." *Watchguard Techs., Inc. v. Valentine*, 433 F. Supp. 2d 792, 794 (N.D. Tex. 2006). "[T]he central purpose of a preliminary injunction . . . is to prevent irreparable harm. It is the threat of harm that cannot be undone which authorizes exercise of this equitable power to enjoin . . . ." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). Paramount to the Court's discussion of this element is the consideration of whether: (a) Plaintiffs are entitled to a presumption of irreparable harm in this instance; and (b) Plaintiffs have raised enough evidence to support the presumption or an independent showing of irreparable harm.

The first issue under the Court's consideration, whether Plaintiffs can claim a presumption of irreparable harm, is not a straightforward matter. In fact, it was recently involved in a Fifth Circuit opinion:

> Though the parties did not provide a choice of law analysis, it is unclear whether federal courts should apply a *state-law* 'presumption of irreparable harm' when determining whether a preliminary injunction should issue in *federal* court. *Compare Heil Trailer Int'l. Co. v. Kula*, 542 F. App'x 329, 336-38 (5th Cir. 2013) (vacating the denial of a preliminary injunction in part on the basis that Texas courts presume irreparable harm where trade secrets have been misappropriated) *with Daniels Health Sciences, L.L.C. v. Vascular Health Sciences*, L.L.C., 710 F.3d 579, 585 (5th Cir. 2013) (citing only federal authorities in finding no error in the district court's conclusion that irreparable harm was likely).

*Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1021 n.4 (5th Cir. 2023).

The Court does not endeavor, through this Memorandum Opinion and Order, to lay this growing legal question to rest. However, as this Court claims jurisdiction exclusively under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* and 28 U.S.C. § 1331, the application of the

presumption is less than clear. *See Heil*, 542 F. App'x at 335 ("Because both the availability and the measure of damages are governed by state law in a diversity case, it follows that state law also governs whether certain injuries qualify as irreparable for the purposes of granting a preliminary injunction."); *see also NuPulseCV, Inc. v. DesignPlex Biomedical, LLC*, No. 4:24-CV-00551-P, 2024 WL 4101786, at *3 (N.D. Tex. July 29, 2024) ("To show irreparable harm for misappropriation of trade secrets under Texas law, a movant need only show that 'the defendant possesses the trade secrets and is in a position to use them.'" (citation omitted)). Regardless of the ease at which this Court may apply the relevant presumption to the case at hand, the fact remains that Plaintiffs have sought recovery for trade secret misappropriation under both Texas and federal causes of action (*See* Dkt. #1 at ¶¶ 31–40). Thus, this Court will consider the application, if any, of the presumption of irreparable harm. *See, e.g.*, *Considerate Commerce Inc. v. ISP Elecs. LLC*, No. 3:23-CV-2140-E-BN, 2024 WL 3251722, at *3 (N.D. Tex. June 5, 2024) (recognizing the application of the presumption of irreparable harm in a case involving trade secret misappropriation where the federal court claimed jurisdiction pursuant to 28 U.S.C. § 1454), *report and recommendation adopted*, No. 3:23-CV-2140-E-BN, 2024 WL 3092443 (N.D. Tex. June 21, 2024).

Plaintiffs argue that they are owed a presumption of irreparable harm under Fifth Circuit precedent as outlined in *Heil*. 542 F. App'x at 336. In that case, the Fifth Circuit reversed the decision of a district court for its failure to apply or consider the notion that "Texas courts have frequently found that irreparable harm is likely in cases where trade secrets have been misappropriated." *Id.* In its decision, the Fifth Circuit expressly referenced a Texas court of appeals decision that held the following: "[w]hen a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed." *Id.* (quoting *IAC, Ltd. v. Bell*

6

*Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.). However, in that same decision, the Fifth Circuit also recognized that the presumption may be defeated or otherwise inapplicable altogether, noting that "the facts and circumstances of a particular case could perhaps show that certain injuries resulting from misappropriation of trade secrets are either compensable by monetary damages or purely speculative, as Texas courts have occasionally found." *Id.* This sentiment was repeated in an employee non-compete context in *Direct Biologics, L.L.C. v. McQueen*, wherein the Fifth Circuit found that a district court did not abuse its discretion by declining to presume the existence of an irreparable injury. 63 F.4th 1015, 1022 (5th Cir. 2023).

Defendant attacks any presumption of irreparable harm by citing *Bianco v. Globus Med., Inc.*, a case decided in this district which openly questioned whether a presumption of harm is proper in light of decisions by the Supreme Court and multiple circuit courts. No. 2:12-CV-00147-WCB, 2014 WL 1049067, at *8 (E.D. Tex. Mar. 17, 2014). However, because the Court finds that Plaintiffs have carried their burden to support both a presumption and an independent showing of irreparable harm, it need not address Defendant's argument directly.

As noted above, under a presumption of irreparable harm analysis, Plaintiffs "need only show that 'the defendant possesses the trade secrets and is in a position to use them.'" *NuPulseCV*, 2024 WL 4101786, at *3 (citation omitted). Here, Defendant's president has submitted a declaration indicating that Defendant maintains a supply of DiamondTrack mats which it continues to market and sell to various customers (Dkt. #233-1). Evidence at trial also revealed that Defendant continues to possess FODS's mold files on its shared drive, and that Defendant's engineering team has access to them, despite the jury's finding that such information constituted a trade secret (*See* Dkt. #235 at p. 7; *see* Dkt. #211). While Defendant contests the present use or accessibility of the

7

FODS files, the fact remains that Defendant's DiamondTrack mats are the manufactured result of a process found by the jury to constitute a trade secret (*See* Dkt. #211). Because Defendant remains in continued possession of FODS's proprietary information and the DiamondTrack mats, and because Defendant actively argues that Plaintiffs do not possess any trade secrets while being unbound by any restraint of use, the Court finds Plaintiffs entitled to the irreparable harm presumption offered under Texas law. *See NuPulseCV, Inc.*, 2024 WL 4101786, at *4 (noting that a defendant's "qualified promise not to 'publish or make public' [a plaintiff's] confidential information . . . is insufficient to defeat irreparable harm" because defendant simultaneously argued that such information is not a trade secret); *see, e.g.*, *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, No. 1:19-CV-229-RP, 2019 WL 2098086, at *2 (W.D. Tex. Mar. 13, 2019) ("The Court further finds a substantial threat of irreparable injury if the injunction is not issued. 'When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed.'" (quoting *IAC*, 160 S.W.3d at 200)).

Even absent any presumption, the Court finds that Plaintiffs have offered sufficient proof to support a finding of irreparable harm in this instance. Under the DTSA, "a court may grant an injunction to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable." 18 U.S.C. § 1836(b)(3)(A)(i). The Texas Uniform Trade Secrets Act likewise provides that "[a]ctual or threatened misappropriation may be enjoined if the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment." TEX CIV. PRAC. & REM. CODE § 134A.003(a). The Fifth Circuit has repeatedly emphasized that a showing of some harm, without more, cannot support injunctive relief:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence

> of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[s] heavily against a claim of irreparable harm.

*Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975).

Importantly, "[a]n irreparable injury is one that cannot be undone by monetary damages or one for which monetary damages would be especially difficult to calculate." *Heil*, 542 F. App'x at 335 (citation modified). Thus, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

Here, Plaintiffs predict that they will suffer a variety of harm if an injunction order does not issue, including:

(a) Loss of customer base and sale opportunities due to Defendant's current practice of flooding the market with products that last "up to ten years;"

(b) Loss of market position due to a forced response to Defendant's price gouging;

(c) Loss of goodwill with customers due to Defendant's repeated contact and advertisements with them; and

(d) Forced election of remedies because the jury charge did not contemplate post-trial activity (Dkt. #230 at p. 7).

These hypothetical sources of harm, taken together, represent a threat of irreparable injury that subverts both the word and spirit of the jury verdict. In consideration of the facts presented, the Court finds that Plaintiffs' proposed harm is sufficient to carry the second element necessary to warrant a preliminary injunction order.

First, the proposed harm is not speculative. Defendant argues that Plaintiffs have failed to support a finding of irreparable injury because they cannot point to a single lost sale, a single lost customer, or any lost goodwill with customers because of Defendant's purported increased sale of

9

DiamondTrack mats (Dkt. #233). While Defendant is correct in this respect, the law does not require a showing of actual harm as a necessary prerequisite to a preliminary injunction. Indeed, injunctive relief remains available to the plaintiff who can carry its burden of proving that the threat of injury is substantial—meaning, "the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[S]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). In support of the substantial threat of injury, Plaintiffs have presented evidence that Defendant has reduced its price of its DiamondTrack mat to unusual lows, is actively soliciting Plaintiffs' customer base, and has sold a greater number of DiamondTrack mats than its typical December average (Dkt. #230-1). Defendant counters Plaintiffs' offer of proof with evidence suggesting that it has only sold 150 DiamondTrack mats to nine customers between the end of trial on November 20, 2025 and December 14, 2025 (Dkt. #237). Defendant further argues that its sales for December 2025 align with its average of 92 units/month for the year of 2024, and that any reduction in price from an average of $1,559 from February to October 2024 and $1,515 from January to May 2025 to an authorized price of $1,200 is reasonable under changing market circumstances (*See* Dkt. #235 at p. 2; Dkt. #233 at p. 6).

The Court is convinced that Plaintiffs have presented evidence sufficient to bring their claim beyond the realm of "unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Plaintiffs have submitted a declaration indicating that two of Plaintiffs' customers have been directly contacted and offered a limited-time "truckload" price of $1,200 per DiamondTrack mat (Dkt. #230-1 at p. 2). The declaration also

10

includes Plaintiffs' understanding that Defendant's solicitation included a discussion of the jury verdict with at least one customer (Dkt. #230-1 at p. 2). Furthermore, Defendant has not contested the fact that the discounted $1,200 price for the DiamondTrack mat constitutes a historic sale for the company (Dkt. #233). While the Court finds that Plaintiffs' characterization of Defendant's actions is exaggerated to an unnecessary degree, it also finds that Defendant's intentional and targeted solicitation of shared customers, combined with its unusual pricing strategy and higher-than average sale figures following the jury verdict, constitutes an articulable and concrete threat of continued misappropriation.[1]

Second, the proposed harm is not entirely compensable with monetary damages and "would be especially difficult to calculate." *Heil*, 542 F. App'x at 335 (citation modified). Courts in this district have previously held that "a firm faces irreparable harm within its market when a competitor can misappropriate its trade secrets and benefit from them 'without first investing the time, expense, and labor' which the firm itself had to put in to create that trade secret." *HealthTrackRX, Inc. v. Samaha*, No. 4:24-CV-1100-SDJ, 2025 WL 1782559, at *7 (E.D. Tex. Feb. 3, 2025) (citing *AHS Staffing, LLC v. Quest Staffing Group, Inc.*, 335 F. Supp. 3d 856, 873 (E.D. Tex. 2018). Defendant's persistent and discounted sale of a product found by a jury to be manufactured as a result of trade secret misappropriation, together with Defendant's express solicitation of Plaintiffs' customers, represents a harm that cannot be undone by money alone. *See Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2022 WL 2813069, at *8

---

[1] Plaintiffs repeatedly label Defendant's actions as an attempt to "flood the market" with a product that uses Plaintiffs' trade secrets (Dkt. #230 at p. 1; Dkt. #235 at p. 1). The Court finds no evidence of any such "flood" under the facts presented. As a result, the Court declines to speculate on the hypothetical harm presented by an exaggerated "flood" of the market and instead centers the question of irreparable harm on the realistic ramifications of Defendant's particular marketing strategy.

11

(S.D. Tex. June 10, 2022) (emphasis added) ("[d]efendants attempted to bypass [the inventive] process and produce a competing product at a lower price, essentially undercutting Plaintiffs and driving them out of the market. *If this occurred*, Plaintiffs would suffer irreparable harm."), *report and recommendation adopted*, No. 4:19-CV-01118, 2022 WL 2806538 (S.D. Tex. July 18, 2022), *aff'd sub nom. Calsep A/S v. Dabral*, 84 F.4th 304 (5th Cir. 2023).

Because Plaintiffs have offered evidence sufficient to either avail themselves of the presumption of irreparable harm (if applicable) or to support a standalone finding of irreparable harm, the Court finds that the second factor of the preliminary injunction analysis favors Plaintiffs.

## IV.   Balance of Hardships

Plaintiffs argue that the third element, the balance of hardships between the parties, is skewed heavily in their favor. They emphasize that they stand to suffer price erosion, a loss of market position, a loss of business opportunities and damage to their goodwill if Defendant is permitted to continue selling its DiamondTrack mat into the fast-approaching trade show season (*See* Dkt. #235 at p. 9; Dkt. #230 at p. 7). Defendant counters by claiming that an injunction aimed at its DiamondTrack mat would prevent it "from being able to compete in the trackout control market whatsoever" (Dkt. #233 at p. 14). The Court finds that Plaintiffs bear the greater weight of hardship, as Defendant is no longer manufacturing or producing their DiamondTrack model, and is actively selling four industrial matting products (Dkt. #237 at p. 2). The proposed injunction will therefore not heavily damage or negatively influence Defendant's continued operations, but rather simply act to prevent any liquidation of the DiamondTrack model pending this Court's final judgment. *See PSP Franchising, LLC v. SureFed Plus, LC*, No. SA-25-CV-00544-XR, 2025 WL 3035112, at *11 (W.D. Tex. Oct. 20, 2025) ("Requiring Defendants to cease operations will impose a substantial injury."); *see also Bennigan's Franchising Co., L.P. v. Swigonski*, No. CIVA

3:06CV2300G, 2007 WL 603370, at *5 (N.D. Tex. Feb. 27, 2007) ("If the plaintiffs' motion for injunctive relief is granted, the defendants will be forced to close the restaurant. This is a substantial injury."). Accordingly, the Court finds that the balance of hardships ultimately favors Plaintiffs over Defendant.

## V.  Public Interest

The final factor "invites consideration of the equities by the Court which 'involves weigh[ing] the public interest against the injury to the parties from the grant or denial of injunctive relief.'" *Walker v. Doe*, No. 6:24-CV-00633-ADA, 2025 WL 1502634, at *5 (W.D. Tex. Jan. 3, 2025) (quoting *Int'l Paper Co. v. Harris Cnty.*, 445 S.W.3d 379, 395 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The public interest favors protection of trade secrets to defend the proper operation of the free market, protect legitimate competition, and to encourage investment in business and innovation. *Metallurgical Industries, Inc. v. Fourtek*, 790 F.2d 1195, 1201 (5th Cir. 1986) ("If a businessman has worked hard, has used his imagination, and has taken bold steps to gain an advantage over his competitors, he should be able to profit from his efforts. Because a commercial advantage can vanish once the competition learns of it, the law should protect the businessman's efforts to keep his achievements secret."). The Court finds protecting Plaintiffs' trade secrets from open misappropriation does not disserve the public interest. Defendant describes Plaintiffs' attempt at receiving an injunctive order as a thinly veiled request for an exclusionary right to sell their FODS trackout mat without competition (*See* Dkt. #233 at p. 14). This is not so. Rather, Plaintiffs seek the ability to compete in the market without suffering the negative consequences of any misappropriation of their trade secrets, as defined by a jury upon the conclusion of a fair trial on the merits. The Court finds this request reasonable and warranted under the circumstances. As

13

a result of the foregoing, the Court finds Plaintiffs entitled to a preliminary injunction pending this Court's final judgment in the imminent future.

## CONCLUSION

It is therefore **ORDERED** that Spartan Composites, LLC's d/b/a FODS and Spartan Mat LLC's Emergency Motion for Interim Preliminary Injunctive Relief (Dkt. #230) is hereby **GRANTED**.

It is further **ORDERED** that Defendant Signature Systems Group, LLC and its officers, employees, servants, agents, attorneys, successors, assigns, and all persons acting in concert or participation with any of them, whether acting directly or through a parent company, affiliate, trust, subsidiary, or division, who receive actual notice of this Order by personal service or otherwise, are hereby **RESTRAINED, ENJOINED,** and **PROHIBITED** from:

  (a)   Manufacturing the DiamondTrack mat;
  (b)   Selling or offering to sell the DiamondTrack mat or supplying the DiamondTrack mat for resale to any customer, whether direct, distributor, reseller, private-label partner, affiliate, or other;
  (c)   Renting or leasing the DiamondTrack mat to any customer, whether direct, distributor, reseller, private-label partner, affiliate, or other; and
  (d)   Marketing or advertising the DiamondTrack mat in any manner, whether for sale or otherwise, through any means, including social media.

It is further **ORDERED** that within three (3) days of this Order, Signature must:

  (a)   Notify any distributors, resellers, rental houses/companies, private-label partners, and affiliates that currently sell, resell, lease, or rent out the DiamondTrack mat of this preliminary injunction and provide them with a copy; and
  (b)   Remove any marketing and/or advertising for the DiamondTrack mat from its website.

It is further **ORDERED** that this preliminary injunction shall take effect immediately and remain in effect until the date the Court enters final judgment. Plaintiffs are not required to post a bond in connection with this preliminary injunction.

**IT IS SO ORDERED.**

**SIGNED this 5th day of January, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE