# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SPARTAN COMPOSITES, LLC, d/b/a FODS, and SPARTAN MAT, LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Civil Action No. 4:24-cv-609 Judge Mazzant |
| | § | |
| SIGNATURE SYSTEMS GROUP, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Application for Attorneys' Fees and Costs (Dkt. #288). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The Court has more thoroughly discussed the factual and procedural history of this case in its prior opinions (Dkt. #156; Dkt. #270). As relevant to the matter before the Court, Plaintiffs prevailed against Defendant on their breach of contract and a majority of their trade secret misappropriation claims (Dkt. #211). On April 30, 2026, the Court entered its Final Judgment (Dkt. #271) and accompanying opinion (Dkt. #270). The Court recently entered its Amended Final Judgment and accompanying Memorandum Opinion and Order Adopting Advisory Finding of the Jury. The pertinent facts before the Court relate exclusively to fees and costs associated with this case.

On June 30, 2026, Plaintiffs filed their opposed motion for attorneys' fees and costs (Dkt. #288). On July 14, 2026, Defendant filed its response (Dkt. #299). Plaintiffs filed their reply

on July 21, 2026 (Dkt. #307), and Defendant filed its sur-reply on July 28, 2026 (Dkt. #312). The Motion is now ripe for adjudication.

## LEGAL STANDARD

### I. Attorneys' Fees

After determining whether attorneys' fees are recoverable under the applicable law, courts use the lodestar method to calculate reasonable attorneys' fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Id.* The requested rates should fall "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant legal community is the community where "the district court sits." *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation modified). The lodestar is presumptively reasonable. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)

"The party seeking attorneys' fees must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended on the litigation. *Id.*

The Court then considers whether the circumstances warrant a lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any adjustment, the Court considers the twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary

fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. *Id.* (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. ex rel. Douglas W. v. Hou. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citation modified). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *See Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)).

## II. Bill of Costs

Federal Rule of Civil Procedure 54(d) dictates that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). This provision "creates a 'strong presumption' in favor of awarding costs to a prevailing party, and 'a district court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015) (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012)); *see also Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). This is so

because the denial of costs is considered "in the nature of a penalty." *Shwarz*, 767 F.2d at 131 (citation modified).

Awardable costs are set forth by the federal costs statute, 28 U.S.C. § 1920. Under § 1920, courts may award the following types of costs to the prevailing party:

1. Fees of the clerk and marshal;
2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees under section 1923 of this title;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The United States "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Child.'s Med. Ctr. v. The New Eng. PPO Plan of Gen. Consolidation Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007) (internal quotations marks omitted) (quoting *Mota v. Univ. of Tex. Hou. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)). The party seeking recovery under § 1920 bears the burden of proving the amount and necessity of those costs. *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015) (citing *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). The prevailing party carries the burden to demonstrate that the costs it seeks are recoverable. *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 804 (E.D. Tex. 2012), *aff'd sub nom.*, *Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013).

The Court has discretion to deny costs when the "suit was brought in good faith *and* denial is based on at least one of the following factors: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (citation modified).

## ANALYSIS

### I. Entitlement to Attorneys' Fees

The DTSA and TUTSA each authorize a district court to award reasonable attorneys' fees to a prevailing party when their trade secret was found to be willfully and maliciously misappropriated. *See* 18 U.S.C. § 1836(b)(3)(D); TEX. CIV. PRAC. & REM. CODE § 134A.005(3); *Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC.*, 908 F.3d 948, 952 (5th Cir. 2018) (noting that the DTSA "makes prevailing a necessary but not sufficient requirement for fees").

By awarding exemplary damages to Plaintiffs, the jury necessarily found by clear and convincing evidence that "Defendant willfully and maliciously misappropriated Plaintiffs' trade secrets," meaning "intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret" (Dkt. #211 at p. 6; Dkt. #205 at p. 17). The jury's finding of willful and malicious misappropriation is supported by evidence in the record. The jury was informed of the extensive amount of information that was shared between Plaintiffs and Defendant during two failed business acquisitions and found that Defendant unlawfully utilized such information to leverage its position in the marketplace. The jury was also made aware of multiple communications suggesting that Defendant considered and was attempting to navigate "IP infringement" as it related to the FODS mat and the shared information (*See* Plaintiffs' Ex. 112, 114; Defendant's Ex. 243). Because the jury was afforded ample evidence with which to find willful

and malicious misappropriation, the Court will award Plaintiffs with a sum reasonably related to their attorneys' fees.

## II. Reasonable Recovery

Having determined that Plaintiffs are entitled to their attorneys' fees, the Court must now determine the amount Plaintiffs should recover. Plaintiffs request: (a) $865,096.19 in reasonable and necessary attorneys' fees they incurred as of June 30, 2026; (b) $21,273.00 in reasonable and necessary attorneys' fees they anticipate incurring to complete briefing on the present and pending post-judgment motions; (c) $100,000 in conditional appellate fees; and (d) $44,251.06 in court costs (Dkt. #288 at p. 14). Defendant does not challenge Plaintiffs' calculation insofar as it covers $787,429.85 for trade secret misappropriation, but believes that the number should be reduced for various reasons (Dkt. #299 at p. 10). More specifically, Defendant directly challenges Plaintiffs' recovery of "$69,712.17 for intertwined entries referencing the parties' tortious interference claims . . . and $7,954.17 for entries related to [Defendant's] counterclaims" (Dkt. #299 at pp. 1–2).[1] Setting those contentions aside momentarily, the Court will first determine whether Plaintiffs' attorneys' fees calculation is reasonable before handling the remaining challenges incrementally.

Plaintiffs' initial request is supported by the billing records attached to Plaintiffs' Motion and by the signed declaration of Christopher Schwegmann (the "Schwegmann Declaration") of Lynn Pinker Hurst & Schwegmann LLP (Dkt. #288-1). The Schwegmann Declaration indicates

---

[1] The Court excludes Defendant's challenge towards the $9,491.50 figure representing "billing entries relating solely to Plaintiffs' first alleged trade secret," as that sum was ultimately added to Defendant's final calculation and was not thoroughly addressed (Dkt. #299 at pp. 1, 10). The Court also rejects Defendant's challenge to "Plaintiffs' fees prior to March 22, 2024," as Plaintiffs' lodestar excluded irrelevant billing from that time period (*See* Dkt. #288-4 at pp. 3–4).

that Schwegmann has previously litigated "trade secret and breach-of-contract disputes of comparable scope and complexity," and is "familiar with the market rates for legal services in Texas," including the "Eastern District of Texas and the surrounding areas" (Dkt. #288-1 at pp. 1, 9). The document expresses Schwegmann's belief that "[t]he services provided and costs incurred were all necessary for Plaintiffs to file and prevail at trial, and . . . the total fees and costs incurred were reasonable for the work that had to be performed" (Dkt. #288-1 at p. 4). The Schwegmann Declaration also includes the rates and hours of the attorneys and paralegals who worked on this case, and sets out an appropriate lodestar to accompany the specific billing records attached to the Motion (Dkt. #299-1 at pp. 4–5, 9). It also facially justifies the application of a variety of discounts given the outcome of the trial and Plaintiffs' election of remedies (Dkt. #288-1 at pp. 11–12).[2]

Finally, the Schwegmann Declaration notes that Plaintiffs have not sought an upward or downward adjustment of the lodestar, as the *Johnson* factors are already adequately reflected therein (Dkt. #288-1 at p. 12). According to the declaration, Schwegmann charged a rate of $825.00 for 153.9 hours as managing partner; Cox charged a rate of $550.00 for 1,293.7 hours as associate; Ruiz charged a rate of $525.00 for 529.9 hours as associate; and Smoot charged a rate of $315.00 for 374.2 hours as paralegal (Dkt. #288-1 at p. 9). The Court is satisfied by the presumption offered by the document, and finds that $787,429.85[3] constitutes a reasonable and necessary initial sum related to Plaintiffs' attorneys' fees. Whether that base number should be raised or lowered will be addressed at length below.

---

[2] As briefly addressed later in the opinion, Plaintiffs allege that "[i]f no additional relief is awarded on Plaintiffs' breach of contract claim, Plaintiffs can recover 70% of their intertwined fees" (Dkt. #288-1 at p. 11). However, Plaintiffs believe that if the Court grants equitable relief under Plaintiffs' breach of contract claim, Plaintiffs can recover 80% of those fees (Dkt. #288-1 at p. 11).

[3] This number does not mirror Plaintiffs' proposed final lodestar amount but does utilize the calculations and information contained in the Schwegmann Declaration.

## III. Breach of Contract Counterclaim

After two days of trial, Defendant decided to drop its affirmative breach of contract counterclaim (Dkt. #219 at p. 110). At that time, Plaintiffs reserved their right to pursue attorneys' fees on the ground that the "claim did not proceed into trial" (Dkt. #219 at p. 110). Following a largely favorable jury verdict, Plaintiffs argue that Defendant's decision to drop its affirmative breach of contract counterclaim after two days of trial indicates that Defendant nonsuited to "avoid an unfavorable ruling on the merits" such that Plaintiffs should be awarded their attorneys' fees and costs spent defending against it (Dkt. #288 at p. 8; Dkt. #307 at p. 4). To that end, Plaintiffs ask that the Court award them $7,954.17 pursuant to Rule 41 of the Federal Rules of Civil Procedure (Dkt. #307 at p. 4). Defendant contests Plaintiffs' argument by claiming that it did not take such action to avoid an unfavorable ruling on the merits, and that Plaintiffs "incurred no additional fees to defend [Defendant's] breach of contract counterclaim beyond those they would have incurred to prosecute their own affirmative breach of contract claim" (Dkt. #299 at p. 7).

Federal Rule of Civil Procedure 41 permits a district court to impose conditions on voluntary dismissal, including the requirement that the claimant bears the defending party's costs and attorneys' fees. *See Balistreri v. Metro. Life Ins. Co.*, 272 F. App'x 345, 346 (5th Cir. 2008) (per curiam) (unpublished) (citing FED. R. CIV. P. 41(a)(2)). The Court may impose such conditions "on terms that the court considers proper." FED. R. CIV. P. 41(a)(2); *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990) ("Where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal").

Upon review of the record, the Court declines to exercise its discretion to enforce a condition against Defendant regarding its mid-trial nonsuit. The Court finds that Plaintiffs have

not sufficiently demonstrated that they were heavily prejudiced by the unconditional dismissal of Defendant's breach of contract counterclaim, or that Defendants nonsuited to avoid a ruling on the merits. At trial, Plaintiffs and Defendant addressed multiple sections of the 2019 Settlement Agreement ("the Settlement Agreement") and introduced a variety of evidence pertaining to the parties' actions under Section 2.2, Section 2.1.2, and 2.1.3. Importantly, Plaintiffs' corporate representative openly admitted to Plaintiffs' active breach of the Settlement Agreement: "Q: 'So [Plaintiff] is actively breaching this Settlement Agreement, right?' A: 'Yes.'" (Dkt. #215 at p. 193; *see* Plaintiffs' Ex. 93, P093.002), and Plaintiffs' counsel initially approached the issue by adopting a "who would have breached first" style of argument: "Q: 'Does that mean that [Defendant] *was also* in breach of the agreement for continuing to manufacture [a mat product]?' A: 'Yes.'" (Dkt. #215 at p. 198 (emphasis added)). While Plaintiffs likely incurred a small amount of attorneys' costs specifically pertaining to Defendant's counterclaim as opposed to their own affirmative breach of contract claim, the absence of any unnecessary delay or unfair litigation tactics leads the Court to believe that the equities do not weigh in favor of a discretionary award of attorneys' fees and costs against Defendant under Rule 41(a)(2). *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002) ("Although abuse of discretion review gives the district court a great deal of leeway in crafting conditions to dismissal, the district court must be careful to craft conditions that are not overbroad."). As a result, Plaintiffs will not receive their requested $7,954.17 on this ground.[4]

[4] Plaintiffs reserved their right to "seek fees related to Plaintiffs' breach of contract claim" (Dkt. #288 at p. 6 n.3) pending the Court's ruling on their prior Motion to Alter or Amend the Final Judgment (Dkt. #276). The Court declines to modify its present attorneys' fees finding in the absence of any exercise of that alleged right.

## IV. Tortious Interference

Both parties asserted and dropped tortious interference claims prior to trial (*See* Dkt. #299 at p. 9). Plaintiffs' failure to succeed on its tortious interference claim renders an award of attorneys' fees related to the claim improper in this context. *See Bland v. Comm'r of Soc. Sec.*, No. 6:18-CV-635-JDK-JDL, 2021 WL 9315344, at *2 (E.D. Tex. Sept. 28, 2021) ("Under the traditional 'American Rule,' litigants are responsible for their own attorney's fees." (citing *W.M.V.C. v. Barr*, 926 F.3d 202, 208 (5th Cir. 2019))). Plaintiffs, however, argue that they should recover certain fees and costs which are referenced alongside their tortious interference claims.

"Under Texas law, 'if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees.'" *Thomas v. Hughes*, 27 F.4th 995, 1020 (5th Cir. 2022) (quoting *Tony Gullo Motors I v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). However, the duty to segregate fees does not arise when fees for recoverable services are necessarily "intertwined" with unrecoverable fees. *Luxottica of Am. Inc. v. Brave Optical, Inc.*, No. 4:22-CV-244, 2025 WL 1237542, at *2 (E.D. Tex. Apr. 29, 2025), *aff'd*, No. 25-40309, 2025 WL 3530621 (5th Cir. Dec. 9, 2025).

Plaintiffs claim that they need not segregate recoverable from unrecoverable fees related to their tortious interference claims, as the discrete legal services "advance both a recoverable and unrecoverable claim." *Chapa*, 212 S.W.3d at 311, 313–14. Plaintiffs request that the Court grant them a 66% recovery rate for the "35 billing entries that partially reference tortious interference issues" such that Plaintiffs recover $69,712.17—an amount they claim "reflects a conservative estimate of the recoverable portion of work that *simultaneously advanced* Plaintiffs' trade secret claims and tangentially referenced tortious interference issues" (Dkt. #307 at p. 5 (emphasis added)).

Plaintiffs, as the party seeking to recover nonsegregated attorneys' fees, "bear[] the burden of demonstrating segregation is not required." *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*, No. 09-14-00316-CV, 2017 WL 4182292, at *6 (Tex. App.—Beaumont Sept. 21, 2017, no pet.). Plaintiffs "created a presumption that [their] intertwined fees were recoverable at [their] suggested discounted rate," as the Schwegmann Declaration "rendered [an] opinion regarding the amount of necessary work that would have been performed even if there were no unrecoverable claims." *Luxottica*, 2025 WL 1237542, at *6; (Dkt. #288-1 at p. 11). For instance, Plaintiffs provided their opinion that the 4% additional reduction accounted for the "minor role" the claims played in litigation (Dkt. #288-1 at p. 11). Defendant argues only that Plaintiffs' tortious interference claim "dealt exclusively with [Defendant's] loyal customer Sunbelt" and that bills referencing the claim therefore cannot support any recovery (Dkt. #312 at pp. 4–5). To address this concern, the Court turns to the claim as found in the live complaint:

> There was a reasonable probability that [Plaintiffs] would have entered into a business relationship with Sunbelt and other customers and dealers of trackout control mats. [Defendant] unlawfully misappropriated [Plaintiffs'] trade secrets, as alleged, and used those secrets to leverage its own relationship with Sunbelt, which was both wrongful and tortious. As a result of [Defendant's] tortious conduct, [Plaintiffs were] prevented from contracting with Sunbelt and other dealers and contractors, and [Plaintiffs have] suffered damages as a result thereof.

(Dkt. #1 at p. 15).

Because the billing records and face of the complaint each indicate that the claim partially relies upon Defendant's misappropriation of Plaintiffs' trade secrets, and because the claim implicates the adverse consequences of such misappropriation, the Court finds that Plaintiffs have carried their burden of identifying a potential to recover for "discrete legal services [that] advance both a recoverable and unrecoverable claim." *Bungalow Revival, LLC v. Cruz*, No. 01-23-00415-CV, 2025 WL 3038082, at *8 (Tex. App.—Houston [1st Dist.] Oct. 31, 2025, no pet.). Furthermore,

after reviewing the Motion, declarations, applicable case law, trial testimony, evidence in the record, and attached spreadsheets, the Court finds that 4% constitutes a reasonable reduction in the face of Plaintiffs' unrecoverable tortious interference claim. As a result, Plaintiffs will be permitted to recover their requested $69,712.17 on this ground.

## V. Attorneys' Fees Reduction

Having determined that Plaintiffs' attorneys' fees evidence supports an award of $857,142.02, the Court must now decide if the award should be reduced. Defendant argues that any attorneys' fees award should be reduced by a flat 50% based on (a) Plaintiffs' pre-suit escapade to Defendant's manufacturing facility in Orlando, Florida—an event which has previously been discussed by this Court in a "death sanctions" context (Dkt. #156) along with evidence suggesting that Plaintiffs kept and used Defendant's customer list "a year after acquisition discussions ceased"; (b) the absence of deterrence; and (c) Defendant's success on Questions 1(B) and 2(B) of the verdict (Dkt. #299 at pp. 5–6). The Court addresses each contention in kind.

### 1. Plaintiffs' Escapade and Bad Faith Conduct

Defendant's primary contention under this theory is that "Plaintiffs cannot obtain a full fee award by invoking [Defendant's] alleged bad faith while minimizing the Court's own express finding that Plaintiffs acted in bad faith in connection with their trade-secret claims" (Dkt. #312 at p. 4). Defendant is correct in its assertion regarding a previous finding of pre-litigation bad faith conduct—the Court has already determined that Plaintiffs acted in bad faith by intentionally and secretly sending their employee into Defendant's private manufacturing facility (*See* Dkt. #299 at p. 5). The Court also determined that such bad faith warranted the introduction of related evidence at trial (*See* Dkt. #218 at pp. 46–48). As a result, the jury heard evidence related to Plaintiffs' trip, and learned about the deceit that was weaponized against Defendant.

Defendant now asks that the Court apply a four-element test to determine the appropriate amount of attorneys' fees, such that the Court modify the lodestar amount according to the bad faith of either party. In making this request, Defendant cites *Computer Sciences Corp. v. Tata Consultancy Services Ltd.*, No. 3:19-CV-0970-X, 2024 WL 6909861, at *45 (N.D. Tex. June 13, 2024), a case concerning a district court's assessment of attorneys' fees in a trade secret misappropriation context. In that case, the district court found that "[i]n cases where a federal statute allows for attorney's fee recovery at the discretion of the court, the Fifth Circuit finds that the court should consider" a multi-factor test outlined in *Wegner v. Standard Ins. Co.*, 129 F.3d 814 (5th Cir. 1997). *Computer Scis.*, 2024 WL 6909861, at *45. In *Wegner*, the Fifth Circuit analyzed whether an award of attorneys' fees was warranted in an ERISA context, and utilized the following five factors to do so:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Wegner*, 129 F.3d at 821.

Plaintiffs argue that "the Fifth Circuit has never adopted those factors outside the ERISA context" and claim that the *Wegner* case itself limits the test to ERISA claims specifically (Dkt. #307 at p. 2 n.1). On its face, the *Wegner* analysis does appear limited in scope. The fourth element concerns ERISA specifically, and the Fifth Circuit further opined that "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the *nuclei of concerns that a court should address in applying section 502(g)*." *Id.* (emphasis added) (internal quotation marks omitted) (quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255,

1266 (5th Cir. 1980)). While the district court in *Computer Sciences* addressed this problem by simply cutting the fourth element from the test altogether, the Court declines to strictly apply the *Wegner* analysis to this trade secret and breach of contract dispute in the absence of additional evidence of its widespread application. *Computer Scis.*, 2024 WL 6909861, at *45. Rather, the Court finds that a flat 50% reduction of the lodestar amount is not warranted as an additional means to address Plaintiffs' previous pre-suit bad faith actions. *See generally Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir. 1984) (approving of a district court's decision to reject a "50% reduction in the lodestar figure" as a penalty in a 42 U.S.C. § 1988 context (internal quotation marks omitted) (quoting *McKenna v. Peekskill Hous. Auth.*, 573 F. Supp. 976, 981 (S.D. N.Y. 1983))).

**2. Deterrence**

Defendant also requests a flat 50% reduction because the Court has already entered judgment ordering disgorgement of all Defendant's DiamondTrack profits and treble damages reflecting the jury's award. However, DTSA and TUTSA each permit fee-shifting *in addition to* an award of exemplary damages. The Court declines to shift its previous attorneys' fees analysis on the basis that Plaintiff succeeded at trial in receiving an unjust enrichment and exemplary damages award—the imposition of an attorneys' fees award constitutes a permissible additional deterrent separate from the relief identified above. *See Comet Techs. USA, Inc. v. XP Power, LLC*, 181 F.4th 988, 1003 (9th Cir. 2026) (Hamilton, J., concurring) ("The DTSA offers trade secret plaintiffs several forms of relief to protect their intellectual property and to punish thieves, namely those listed in the statutory text above . . . . When Congress wanted to make these forms of relief mutually exclusive, it did so." (citing § 1836(b)(3)(B)(ii))).

### 3. Defendant's Success on the Jury Verdict

Defendant argues that the jury's mixed verdict, along with the tenuous nature of Plaintiffs' inverted mold trade secret, supports a 50% reduction or outright denial of Plaintiffs' requested attorneys' fees (Dkt. #299 at p. 6). Plaintiff responds that the relevant lodestar amount "already accounts for the single unsuccessful trade secret," because it does not bill any entries at full value outside of those relating solely to "Trade Secret No. 1" (Dkt. #307 at p. 3). The Court finds that Plaintiffs' successes and losses as detailed by the jury verdict have been equally reflected by the relevant lodestar discounts, and declines to reduce the attorneys' fees award any further on that ground.

## VI. Costs of Court

In their Motion, Plaintiffs requested an award of $44,251.06 for costs of court and expenses (Dkt. #288 at p. 12). "Defendant does not object to Plaintiffs' calculation of taxable costs set forth in [their] Bill of Costs" (Dkt. #299 at p. 10). As a result, the Court sees fit to award $44,251.06, representing reasonable court costs and expenses, to Plaintiffs.

## VII. Appellate Fees

Plaintiffs request $100,000 in conditional appellate fees (Dkt. #288 at p. 2). Defendant argues that prospective fees are not warranted in this case, as it does not directly challenge the jury's willfulness finding and has instead limited its post-trial challenges to "Plaintiffs' strategic decisions as to how they chose to litigate their case at trial" (Dkt. #299 at p. 9). Plaintiffs respond that Defendant has erroneously conflated "fee entitlement with appellate scope" and ignored the fact that "conditional appellate fees are awarded only if Plaintiffs prevail on appeal" (Dkt. #307 at p. 5).

"It is well-settled that an award of attorneys' fees may include conditional fees for an appeal." *Centerpoint Energy Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. CV 09-2107, 2011 WL 13134747, at *4 (S.D. Tex. Sept. 9, 2011). However, "[f]ederal district courts in this circuit are hesitant to award such fees, because, typically, the Fifth Circuit will remand the appropriate fee determination once the claim for fees is ripe for adjudication." *Id.* (citing *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d. 777, 786 (S.D. Tex. 2007)). Prior to awarding conditional appellate fees, district courts typically require a relatively detailed "basis for the amounts requested" *Amlin Corp. Member, Ltd. v. Logistics Grp. Int'l, Inc.*, 2011 WL 3271335, *10 (S.D. Tex. July 28, 2011).

Because the Fifth Circuit has determined that a district court does not err when denying conditional appellate fees, the Court declines to reward Plaintiffs with $100,000 in speculation. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003) ("It is difficult to imagine how a district court's refusal to award appellate attorney fees before an appeal had even been taken could possibly be declared an error."); *Penton v. Am. Bankers Ins. Co. of Fla.*, 115 F. App'x 685, 686–87 (5th Cir. 2004) (unpublished) ("A district court's refusal to award appellate attorney's fees before an appeal has even been taken is not error.").

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Application for Attorneys' Fees and Costs (Dkt. #288) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiffs are entitled to recover **$857,142.02** in reasonable and necessary attorneys' fees incurred through June 30, 2026, plus **$21,273.00** in reasonable and necessary attorneys' fees that were anticipated to complete briefing on the Motion and

post-judgment motions. Interest shall accrue at the rate allowed by law from the date of this Memorandum Opinion and Order until such amounts are paid in full.

It is further **ORDERED** that Plaintiffs are entitled to recover **$44,251.06** in taxable court costs pursuant to 28 U.S.C. § 1920.

**IT IS SO ORDERED.**

**SIGNED this 27th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE